**COMMONWEALTH of Pennsylvania,
Appellant**

v.

**Brian JOHNSON, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 26, 2013.

Filed April 23, 2013.

Stephen B. Harris, Doylestown, for Appellant.

BEFORE: PANELLA, ALLEN, and PLATT,* JJ.

OPINION BY ALLEN, J.:

The Commonwealth appeals from the trial court's May 9, 2012 order granting the suppression motion of Appellee, Brian Johnson ("Johnson"). We reverse.

The pertinent facts are as follows: On or about December 12, 2011, officers of the Bensalem Township Police Department, Bucks County, Pennsylvania, received information from two anonymous informants that controlled substances, specifically marijuana and prescription pills, were being sold from Unit 97–A at 1313 Gibson Road, a trailer park within the Township of Bensalem. Affidavit of Probable Cause, 12/14/11; N.T., 5/9/12, at 6. One of the informants advised the officers that an older white female with red hair, who resided in the trailer park, was involved in the drug transactions. *Id.* at 46–54.

On December 12, 2011, at approximately 10 a.m., Officers Adam Schwartz, Michael Brady, and Joseph Gansky responded to the report of drug activity, arriving at the trailer park in plain clothes and in an unmarked police vehicle, but wearing po-

* Retired Senior Judge assigned to the Superior Court.

lice badges. *Id.* at 5–8, 46. Upon arrival, Officers Brady and Schwartz approached Unit 97–A while Officer Gansky remained in the police vehicle. *Id.* As the officers approached Unit 97–A, they observed an "older white female with red hair" in the vicinity of Unit 97–A, who informed them that she lived in the trailer park. *Id.* at 46–54. The woman asked the officers who they were. *Id.* After informing her that they were police officers, they asked her to leave the area so they could continue their investigation of Unit 97–A, and she complied. *Id.* at 46.

Officers Brady and Schwartz then approached Unit 97–A, and while ascending a set of wooden steps leading to the elevated deck of the trailer, the officers detected the strong odor of burnt marijuana emanating from Unit 97–A. *Id.* at 8, 35–37. Fearing that the woman with red hair would alert the occupants of Unit 97–A to their presence, leading to the destruction of evidence, the officers opted not to leave to obtain a search warrant, and instead knocked on the door of the trailer. *Id.* at 47. Johnson opened the door, remaining inside the doorway in the "threshold area" of the trailer. *Id.* at 9, 25, 37. When the door opened, the officers observed that the trailer was smoke-filled, and detected an even stronger smell of burnt marijuana emanating from the trailer, leading the officers to believe that marijuana was actively burning inside the residence. *Id.* at 9–11, 36. Johnson stepped out of the trailer and onto the porch area, approximately one and a half feet outside the front door. *Id.* at 24; 37. The officers asked Johnson if they could enter the trailer to speak with him, to which Johnson replied, "go fuck yourself, you're not coming in my house." *Id.* at 10, 23–24, 37–38. Officer Schwartz informed Johnson that he would obtain a search warrant, whereupon Johnson told them to "go ahead and do that" before turning around to re-enter the trailer. *Id.* at 10–12, 24, 37–38.

Fearing that Johnson was going to destroy evidence, Officers Schwarz and Brady informed Johnson that they needed to secure the residence, and took hold of Johnson by the arm to prevent him from re-entering the trailer. *Id.* at 12, 37–38. Johnson pulled away, "became aggressive" and pushed at the police officers. *Id.* at 10–12, 24, 37–38. In the ensuing struggle, all three men slipped and fell from the porch to the pavement. *Id.* The officers subsequently placed Johnson under arrest. During a search incident to the arrest, the officers recovered $458 from Johnson. *Id.* at 12–14.

After restraining Johnson, the police officers asked him if there was anybody else in the trailer, to which Johnson responded "yes." *Id.* at 14. While Officer Brady transported Johnson to the police station, Officers Schwartz and Gansky knocked again on the front door of Unit 97–A and called for the occupants. Receiving no response, the officers entered Unit 97–A "to make sure there was no one else inside." *Id.* Upon entering, the officers encountered Johnson's wife. *Id.* at 17. Mrs. Johnson asked the officers to leave, but after the officers explained that they were securing the residence pending a search warrant, Mrs. Johnson voluntarily left the trailer. *Id.* at 14–17. The officers "looked into" the various rooms of the trailer to ensure nobody else was present, but did not conduct a search for contraband. *Id.* at 44. The officers did however observe, in plain view, a marijuana cigarette actively burning in the living room area. *Id.* at 17–18. The officers did not see any other drugs or paraphernalia. *Id.* After Mrs. Johnson departed, Officer Gansky remained on the porch to ensure the security of the trailer pending issuance of the search warrant. *Id.* at 40.

Johnson was transported to the police station, where Officer Brady provided him with *Miranda*[1] warnings, after which Johnson provided a written statement admitting to the possession, use, and delivery of marijuana, and indicating that there was marijuana stored in the kitchen cabinet of his trailer. *Id.* at 28–33; Commonwealth Exhibit 1. *See also* Trial Court Opinion, 8/16/12, at 2–5.

Johnson was subsequently charged with possession of a controlled substance with intent to deliver, possession with intent to use drug paraphernalia, person not to possess a firearm, and resisting arrest.[2] An affidavit for a search warrant was prepared and submitted to District Judge Baranoski, who issued a warrant at 3:15 p.m., approximately four hours after the incident began. *Id.* at 17–19; Trial Court Opinion, 8/12/16, at 5.

On August 21, 2012, Johnson filed a pretrial motion to suppress the physical evidence from the trailer and the incriminating statements he made after his arrest, asserting that the evidence was obtained in violation of his rights pursuant to the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. The trial court convened a hearing on May 9, 2012, at the conclusion of which the trial court granted Johnson's suppression motion. N.T., 5/9/12, at 75. The Commonwealth filed a timely notice of appeal asserting that the grant of Johnson's suppression motion would terminate or substantially handicap the prosecution. Pa.R.A.P. 311(d). Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925. Johnson did not file a responsive brief before this Court.

The Commonwealth presents the following issues for our review:

A. WHETHER THE SUPPRESSION COURT ERRED AND/OR MISAPPLIED THE STANDARD FOR SEARCHES AND SEIZURES BY SUPPRESSING THE EVIDENCE SEIZED IN THIS CASE BASED ON ITS FINDINGS THAT THE POLICE OFFICERS WERE REQUIRED TO OBTAIN A SEARCH WARRANT FOR [JOHNSON'S] RESIDENCE IMMEDIATELY AFTER SMELLING THE ODOR OF BURNT MARIJUANA COMING FROM THE RESIDENCE, AND WERE NOT OTHERWISE PERMITTED TO FURTHER THEIR INVESTIGATION THROUGH OTHER REASONABLE MEANS, SUCH AS ATTEMPTING TO SPEAK WITH THE RESIDENT OR SEEK CONSENT?

B. WHETHER THE SUPPRESSION COURT ERRED AND/OR MISAPPLIED THE LAW IN CONCLUDING THAT THE OFFICERS UNLAWFULLY ENTERED [JOHNSON'S] RESIDENCE PRIOR TO OBTAINING THE SEARCH WARRANT WHERE THE OFFICERS WERE JUSTIFIED IN BRIEFLY ENTERING AND SECURING [JOHNSON'S] HOME TO PREVENT THE DESTRUCTION OR REMOVAL OF EVIDENCE WHILE THE SEARCH WARRANT WAS BEING OBTAINED BASED ON THE FOLLOWING: THE OFFICERS SMELLED THE ODOR OF BURNT MARI-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)

2. 35 P.S. §§ 780–113(a)(30) and (32), and 18 Pa.C.S.A. §§ 6105(a)(1), and 5104, respectively.

JUANA AND OBSERVED SMOKE INSIDE [JOHNSON'S] RESIDENCE, AND WHERE AFTER [JOHNSON] DENIED CONSENT TO ENTER AND/OR SEARCH AND WAS ADVISED THAT A SEARCH WARRANT WOULD BE OBTAINED, [JOHNSON] ATTEMPTED TO RE–ENTER THE HOME?

C. WHETHER THE SUPPRESSION COURT ERRED AND/OR MISAPPLIED THE LAW IN FINDING THAT THE DETENTION AND SUBSEQUENT ARREST OF [JOHNSON] WAS UNLAWFUL WHERE THE OFFICERS WERE JUSTIFIED IN STOPPING [JOHNSON] FROM REENTERING HIS HOME AND DETAINING HIM UNDER THE FOLLOWING CIRCUMSTANCES: WHERE THE OFFICERS SMELLED THE ODOR OF BURNT MARIJUANA AND OBSERVED SMOKE INSIDE [JOHNSON'S] RESIDENCE; WHERE AFTER [JOHNSON] DENIED POLICE CONSENT TO ENTER AND WAS ADVISED THAT A SEARCH WARRANT WOULD BE OBTAINED, [JOHNSON] ATTEMPTED TO RE–ENTER HIS HOME; AND, WHEN OFFICERS ATTEMPTED TO STOP [JOHNSON] FROM REENTERING HIS HOME, [JOHNSON] PUSHED AND/OR PULLED AWAY FROM THE OFFICERS AND CREATED A STRUGGLE WHICH LED TO [SIC] THE OFFICERS AND [JOHNSON] TO FALL FROM THE FRONT STEPS TO THE GROUND?

D. WHETHER THE SUPPRESSION COURT ERRED IN DETERMINING THAT [JOHNSON'S] STATEMENT TO POLICE WAS FRUIT OF THE POISONOUS TREE BY FINDING THAT IT WAS OBTAINED FOLLOWING WHAT THE COURT DETERMINED TO BE AN UNLAWFUL ARREST?

Commonwealth Brief at 4.

The Commonwealth's first three issues challenging the trial court's grant of suppression are interrelated. Therefore, we will address them together. Our standard of review of a Commonwealth's appeal from the trial court's grant of a motion to suppress is as follows:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

*Commonwealth v. Miller*, 56 A.3d 1276, 1278–1279 (Pa.Super.2012) (citations omitted).

The Commonwealth challenges the trial court's determination that the actions of the police officers were unlawful. Specifically, the Commonwealth challenges the trial court's conclusion that the police officers lacked the probable cause and exigent circumstances necessary to take Johnson into custody and search his trailer. Because we conclude that the police officers' actions were supported by probable cause and exigent circumstances, we agree with the Commonwealth.

▆ "The law of search and seizure remains focused on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime." *Commonwealth v. Bostick*, 958 A.2d 543, 556 (Pa.Super.2008) (citations and quotations marks omitted). It is well established that "probable cause alone will not support a warrantless search or arrest in a residence ... unless some exception to the warrant requirement is also present.... [A]bsent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, **even** where probable cause exists." *Commonwealth v. Santiago*, 736 A.2d 624, 631 (Pa.Super.1999) *quoting Commonwealth v. Govens*, 429 Pa.Super. 464, 632 A.2d 1316, 1322 (1993) (*en banc*) (citations and quotations omitted);[3, 4] *Commonwealth v. Gibbs*, 981 A.2d 274, 280 (Pa.Super.2009) (absent probable cause and exigent circumstances, a warrantless search and seizure in a private home violates both the Fourth Amendment of the United States Constitution and Article 1 § 8 of the Pennsylvania Constitution); *Commonwealth v. Richter*, 791 A.2d 1181, 1184 (Pa.Super.2002) ("The expectation of

3. At the time of his arrest, Johnson was not inside the trailer but was standing outside on the front porch. "Our courts have extended [the] constitutional protection [of the Fourth Amendment and Article 1, § 8 of the Pennsylvania Constitution] to the curtilage of a person's home." *Commonwealth v. Simmen*, 58 A.3d 811, 815 (Pa.Super.2012). If the porch of Johnson's trailer was "curtilage", then both probable cause and exigent circumstances would be required to effectuate a search and seizure. *Commonwealth v. Gibbs*, 981 A.2d 274, 279 (Pa.Super.2009). In determining what constitutes "curtilage," we consider "factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. Curtilage is entitled to constitutional protection from unreasonable searches and seizures as a place where the occupants have a reasonable expectation of privacy that society is prepared to accept." *Simmen*, 58 A.3d at 815. *See Gibbs*, (holding that front porch did *not* constitute "curtilage" where there was no front yard or other enclosed space preceding or surrounding the porch, the porch abutted the sidewalk, there was no gate blocking entry to the porch and nothing else that would indicate that it was closed to members of the general public).

Here, Officer Schwartz described the front porch on which Johnson was arrested as follows: "there's five or six steps that walk up to the trailer, and there's I guess, you would call it, maybe a three foot by four foot landing area." N.T., 5/9/12, at 12. Officer Gansky described the front porch as "a small deck, elevated deck that comes off the ground, about three or four steps onto a deck that would lead into the front door of the trailer." *Id.* at 37.

In its brief, the Commonwealth does not address whether the porch was "curtilage," requiring exigent circumstances for the search and seizure to be valid. "It would be improper for this Court to act as counsel for a party. That is, we must not write a party's brief and develop the analysis necessary to support the party's position." *Commonwealth v. Frey*, 41 A.3d 605, 613–614 (Pa.Super.2012). Moreover, it is the Commonwealth's burden to prove that the search and seizure is valid. *Johnsonna*, 616 A.2d at 1378.

4. The Commonwealth does not assert that Johnson's wife, Mrs. Johnson consented to the search of the trailer. *See Commonwealth v. Perry*, 568 Pa. 499, 798 A.2d 697, 721 (2002) (warrant exceptions include actual consent, implied consent, search incident to arrest, and exigent circumstances); *Commonwealth v. Simmen*, 58 A.3d at 817 ("a third party possessing common authority over a premises can give valid consent to search against a non-consenting person who shares authority because it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched").

privacy protected [by] the United States and Pennsylvania Constitutions has been held to be greatest in one's home."); *Commonwealth v. Martin*, 534 Pa. 136, 626 A.2d 556, 560 (1993) ("An invasion of one's person is, in the usual case, [a] more severe intrusion on one's privacy interest than an invasion of one's property.")

■ In the present case, the police officers arrived at Johnson's trailer in response to a report of ongoing drug dealing. While making their way to Johnson's trailer, the police officers encountered a woman who met the description provided to them as being involved in the drug activity which they were investigating. Fearing that the woman would alert the occupants of the trailer to their presence, leading to the destruction of evidence, the police officers opted to knock on the door of Johnson's trailer in furtherance of their investigation. N.T., 5/9/12, at 47.

Upon ascending the steps to the door of the trailer, the officers immediately detected "a strong odor of burnt marijuana coming from within the trailer." *Id.* at 8. Officer Schwarz testified that he was familiar with the odor of burnt marijuana having encountered it "countless" times in the thirteen years he had worked as a police officer. *Id.* at 4–9. Having detected the strong smell of marijuana emanating from Johnson's trailer, Officers Brady and Schwartz had probable cause to obtain a search warrant. *See Commonwealth v. Waddell*, 2012 WL 5871410 (Pa.Super.2012) ("once the odor of marijuana was detected emanating from the residence, the threshold necessary to establish probable cause to obtain a search warrant was met"). The officers then proceeded with their investigation by knocking on the door of the trailer. When Johnson opened the front door, Officer Schwarz could "see that the trailer was smoke-filled" and the smell of burnt marijuana coming from the trailer

"became even stronger." *Id.* at 9. Johnson exited the trailer and came out to the porch. The police officers asked Johnson if they could enter his residence. Johnson refused. The police officers informed Johnson that they would obtain a search warrant, whereupon Johnson suggested that they do so, and immediately attempted to retreat indoors, when the police officers took hold of him to prevent him from re-entering. Officer Schwartz testified:

At that point, in my opinion [Johnson] was going in there to destroy evidence. So I wasn't going to allow him back inside that residence at that point when there is an ongoing crime in progress.

\* \* \*

I told him we were securing his residence for a search warrant. He was not permitted to go back inside.

\* \* \*

It happened very quick. When he told us to go fuck ourselves, I said, that's fine. He said, you do that, you go get a search warrant. I said, that's fine, we are going to get a search warrant. It was simultaneous. He was going back inside. As he was going back inside, as I was grabbing him, I explained to him he's not going back inside, he's not free to go in there, and we're now obtaining a search warrant for the residence.

N.T., 5/9/12, at 12, 25–26.

Johnson resisted the officers' attempt to restrain him. Following a scuffle, the officers subdued Johnson, placed him in handcuffs, and then conducted a protective sweep of Johnson's trailer, looking into the rooms to ensure that there were no other occupants.

■ As previously explained, the officers developed probable cause to believe that a drug-related crime was occurring

when they ascended the steps of Johnson's trailer and smelled the strong odor of marijuana, coupled with their observation of smoke haze inside the trailer. We therefore turn to the question of whether exigent circumstances existed. Our Courts have explained:

> [V]arious factors need to be taken into account to assess the presence of exigent circumstances; for example: (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry is peaceable; (7) the timing of the entry; (8) whether there is hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant; and (10) whether there is a danger to police or other persons inside or outside of the dwelling to require immediate and swift action.

*Commonwealth v. Dean*, 940 A.2d 514, 522 (Pa.Super.2008). "Essentially, the exigent circumstances exception involves balancing the needs of law enforcement against individual liberties and/or rights. Some factors will outweigh others in a given case." *Commonwealth v. Williams*, 411 Pa.Super. 586, 602 A.2d 350, 354 (1992).

To determine in this case whether exigent circumstances existed under the foregoing balancing test, an examination of the relevant jurisprudence regarding warrantless searches and seizures in private homes is warranted.[5]

In *Commonwealth v. Mason*, 535 Pa. 560, 637 A.2d 251 (1993), police officers received information of illegal drug activity, and arrived at the suspected apartment, with a confidential informant, to conduct surveillance. The officers then conducted an undercover drug purchase, and arrested the drug dealer outside the suspected apartment. One officer then left the scene to obtain a warrant, while the other officers remained. However, one of the officers on the scene, concerned that the occupants of the suspected apartment would be alerted to the police presence following the arrest of the drug dealer, opted to secure the apartment before the search warrant was obtained. To that end, the police officers knocked on the door and, upon receiving no answer, entered the apartment with a battering ram.

Our Supreme Court concluded in *Mason* that the forcible, warrantless entry violated the Pennsylvania Constitution, and that evidence seized pursuant to the search should have been suppressed. The Court explained:

> Were we to accept the police contention that the circumstances of this case were exigent, it is difficult to imagine a case in which the warrantless forcible entry of police would not be excused. It is always possible that criminals may destroy evidence before the police arrive with a warrant, but unless there is something more than suspicion that such destruction of evidence may occur, the circumstances are not exigent.

*Mason*, 637 A.2d at 255, n. 2; *Id.* at 256–257 ("to expand police authority to include battering down doors without a warrant or exigent circumstances, taking the occupants into custody, performing the neces-

---

5. The Pennsylvania Supreme Court has stated that Article I, Section 8 of the Pennsylvania Constitution "embodies a strong notion of privacy [and] often provides greater protection than the Fourth Amendment to the United States Constitution...." *Commonwealth v. Hughes*, 575 Pa. 447, 836 A.2d 893, 902 (2003).

sary cursory searches to insure their own safety, and waiting for the arrival of a warrant that they assume will be granted is beyond the bounds of constitutionally acceptable police conduct)."

Thereafter, our Supreme Court in *Commonwealth v. Roland*, 535 Pa. 595, 637 A.2d 269 (1994) examined whether a warrantless entry into a private home violated the Fourth Amendment. In *Roland*, police officers responded to a report of an assault, and were informed by the victim that he was injured at a party in the defendant's home where underage alcohol consumption and marijuana use were occurring. The officers knocked on the defendant's door, and when the defendant opened it, the officers observed underage individuals sitting near cans of beer, and who, upon seeing the police, attempted to shield the cans from view. The officers entered the residence and conducted a search finding alcohol and marijuana. The defendant was arrested and confessed to supplying alcohol to minors. Applying the balancing test for determining whether an exigency existed, the Court in *Roland* explained:

> [W]e regard the entry by police into appellant's home as improper. Clearly, the police were not in hot pursuit of a fleeing felon. Nor was there a danger to police or other persons that would have necessitated an immediate entry. There was no reason to believe that [the defendant] or the minors were armed. Further, the entry occurred at nighttime, which is a particularly suspect time for searches to be conducted.
>
> At the suppression hearing the police did not testify that they had any information, prior to entering [the defendant's] home, that [the defendant] had furnished beer and liquor to the minors. Nor did they testify that they observed any indication of marijuana use prior to

making their entry. Rather, they stated that their entry was triggered by their belief that underage drinking was taking place, due to their own observation of minors inside the residence who were attempting to shield cans of beer from view.

> Given probable cause to believe that the offense of underage drinking was present, police should have obtained a warrant before searching [the defendant's] home. Underage drinking is not a grave crime of violence, such as might have justified a warrantless entry.

*Roland*, 637 A.2d at 271 (citations omitted). Accordingly, the Court held that the defendant's incriminating statements should have been suppressed.

In *Commonwealth v. Melendez*, 544 Pa. 323, 676 A.2d 226 (1995), police officers conducted ongoing surveillance of a residence in which suspected drug activity was occurring. On the day that the police officers were preparing an application for a search warrant, the defendant left the residence in her car, whereupon the officers stopped her. Fearing that the defendant's arrest would spark the destruction of evidence by other occupants of the residence, the police officers transported the defendant back to the residence, where they used her keys to gain entry, and found a co-defendant holding a bag of cocaine. The officers then secured the house and its occupants, and waited to hear whether the search warrant had been approved.

Our Supreme Court held in *Melendez* that, under Pennsylvania jurisprudence, the warrantless entry into the residence was unsupported by exigent circumstances. The Court explained:

> [I]f the police created a danger that their surveillance might be discovered because they stopped [the defendant's] car, they can hardly be allowed to rely

on that to justify a warrantless intrusion. Had the police simply waited for the search warrant, they could have searched the dwelling and avoided the problems of the present case. Had contraband been found during the search, the police could then have arrested [the defendant] on the basis of this evidence. There were no exigent circumstances.

\* \* \*

If the concern was that police activity might have been witnessed by a person remaining in the house who might begin to destroy evidence, such a possibility is of no legal consequence, for police may not create their own exigencies, which they then use as justification for exclusion from normal warrant requirements. *Melendez*, 676 A.2d at 230–232.[6]

In *Commonwealth v. Gillespie*, 573 Pa. 100, 821 A.2d 1221 (2003) (opinion announcing the judgment of the court), police officers knocked on the defendant's door after receiving a complaint that the defendant, a convicted felon, possessed a firearm.[7] The defendant's wife answered the door and allowed the officers inside to speak with the defendant. The officers informed the defendant about the complaint against him and asked if they could search the residence to which the defendant responded "not without a warrant." The defendant then told the officers to leave, and behaved in a "violent and belligerent" manner. The officers requested that defendant and his wife leave the residence to allow the officers to secure the residence pending a search warrant, but the defendant became aggressive, and the officers handcuffed him.

The plurality in *Gillespie* held that the police officers were engaged in a "legitimate act" because "securing the premises was an appropriate response to [the defendant's] exercise of his right to demand a warrant." *Gillespie*, 821 A.2d at 1226. Once the defendant exercised his right to demand a warrant, that triggered the need to secure the premises, since obtaining a warrant takes time, and there was a significant danger that in his agitated and violent state, the defendant could use the weapon. Therefore, the police officer's act of restraining the defendant to ensure the safety of the officers and others in the home was not improper under the Pennsylvania Constitution. *See id.* citing *Illinois v. McArthur*, 531 U.S. 326, 121 S.Ct. 946, 148 L.Ed.2d 838 (2001).

In *McArthur, supra*, the United States Supreme Court held that a brief seizure (where the police officers prevented a suspect from re-entering his home unaccompanied while they obtained a search warrant) was reasonable, and hence lawful under the Fourth Amendment. The United States Supreme Court reasoned that the seizure was lawful because: the police had probable cause to believe that the suspect's trailer home contained drugs; the police had good reason to fear that, unless restrained, the suspect would destroy the drugs before they could return with a warrant; the police made reasonable efforts to reconcile their law enforcement needs with the demands of personal privacy in that they neither searched the trailer nor arrested the suspect before obtaining a warrant but only prevented him from entering the trailer unaccompanied; and the police

**6.** Both *Melendez* and *Mason* focused on the application of the "inevitable discovery" and "independent source" doctrines, which are not at issue in this case.

**7.** We recognize that the Opinion Announcing the Judgment of the Court in *Gillespie* lacks precedential value because it failed to command the joinder of a majority of participating justices. Nevertheless, we find its analysis informative.

imposed the restraint for a limited period of time, namely, two hours, until the search warrant was obtained. *McArthur,* 531 U.S. at 331–333, 121 S.Ct. at 950–951. Accordingly, the United States Supreme Court concluded that given the limited nature and scope of the intrusion and the law enforcement interest at stake, this brief seizure of the premises was permissible.

In *Commonwealth v. Walker,* 836 A.2d 978 (Pa.Super.2003), a police officer received a report of drug activity in Room 15 of the New Falls Motel. Upon arriving at the motel, the police officer saw the defendant standing in the doorway of Room 15, holding a crack pipe. When the defendant saw the officer, he immediately re-entered the room and closed the door. The officer exited his car, opened the door of Room 15, and entered the room where he recovered drugs and drug paraphernalia from the defendant.

This Court held in *Walker* that the Commonwealth established exigent circumstances to support the warrantless entry. We explained:

> Although [the officer] had no reason to believe that Appellant was armed, would be a danger to the officer or others, or might easily escape, other factors weigh heavily in favor of a finding of exigent circumstances. First, Appellant was suspected of possession of narcotics and paraphernalia, both serious offenses.... [T]here was more than a clear showing of probable cause, and no question that Appellant would be in the motel room, as the officer personally saw him enter it. The time of entry was mid-morning, not at night ... Moreover, the officer's entry was peaceable. Although the door was closed, it was not latched ... it was [j]ust a matter of pushing the weight of the door. Finally, because drugs and crack pipes may be easily disposed, there was a strong like-

lihood here that evidence would be destroyed. Immediately after seeing the officer approach, and while holding a crack pipe in plain view, Appellant turned, reentered the room, and closed the door. It was certainly reasonable for the officer to determine that Appellant might destroy any narcotics and paraphernalia stored in that room.

*Walker,* 836 A.2d at 981 (distinguishing *Roland, supra,* because the offense in Roland was a minor one—i.e. the summary offense of underage drinking—and the circumstances of the warrantless entry were dissimilar; distinguishing *Mason, supra* because there was no indication in *Mason* that the defendant knew of the police presence to spark the destruction of–19—evidence, while in *Walker* the suspect looked directly at the police officer and then attempted to evade arrest).

In *Commonwealth v. Demshock,* 854 A.2d 553 (Pa.Super.2004), a police officer, responding to complaints of automobile thefts and vandalism, was walking through an alley when he observed, through a window, teenagers drinking beer. The officer called for backup, and then knocked on the door, responding, "hey man, it's me" when asked who was there. When a young man opened the door, the officers smelled burnt marijuana. The young man then backed away from the door and the officers pushed it open and entered the residence. We held in *Demshock* that the warrantless entry violated the Fourth Amendment. We explained:

> The police were not in hot pursuit of a fleeing felon, there was no indication that anyone was in danger, including the police or the partygoers, there was no reason to believe that the occupants of the apartment were armed, and the entry occurred at night.

\* \* \*

[T]he exigency relied upon, that is, the need to secure the premises to prevent destruction of evidence, was a direct result of the failure to secure a warrant upon observing underage drinking and the choice to gain entry through subterfuge. It is well established that police cannot rely upon exigent circumstances to justify a warrantless entry where the exigency derives from their own actions.... Under these circumstances, the officers could have made efforts to secure a search warrant and quite possibly could have secured a warrant prior to any of the partygoers realizing that the police were outside.

\* \* \*

[H]ad the police simply applied for a search warrant and waited for its arrival before deciding to enter the premises, they could have effectuated the law enforcement purpose without sacrificing the Fourth Amendment protections against warrantless searches. Conversely, if exigency can be found under facts like those presented here, the need for a warrant could be obviated in many cases. Once police developed probable cause to believe illegal activity was taking place inside a residence, or even the suspicion of the same, police could simply knock upon the door rather than go through the trouble of obtaining a warrant. If the police officer's suspicions are confirmed by what they see when the door is opened, or if the occupants act in such a manner as to suggest evidence might be destroyed if the officers waited, then the "exigency" found here would be created and the police could then make a warrantless entry to prevent the destruction of evidence. The Fourth Amendment could be made substantially impotent if this were the case.

*Demshock,* 854 A.2d at 556–558 (footnotes and citations omitted) (distinguishing *Walker, supra,* because the police in *Walker* did not possess an opportunity to seek a warrant after they had acquired sufficient knowledge of criminal activity and while they remained undetected).[8]

In *Commonwealth v. Dommel,* 885 A.2d 998 (Pa.Super.2005), we held that exigent circumstances justified a police officer's

---

8. *Compare with Kentucky v. King,* —— U.S. ——, 131 S.Ct. 1849, 1852–58, 179 L.Ed.2d 865 (2011):

> Over the years, lower courts have developed an exception to the exigent circumstances rule, the so-called "police-created exigency" doctrine. Under this doctrine, police may not rely on the need to prevent destruction of evidence when that exigency was "created" or "manufactured" by the conduct of the police
>
> \* \* \*
>
> [However] a rule that precludes the police from making a warrantless entry to prevent the destruction of evidence whenever their conduct causes the exigency would unreasonably shrink the reach of the [exigency] exception to the warrant requirement.
>
> \* \* \*
>
> [Rather] warrantless searches are allowed when the circumstances make it reasonable, within the meaning of the Fourth Amendment, to dispense with the warrant requirement.... [T]he exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable in the same sense. Where ... the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed.

*King,* 131 S.Ct. at 1852–58 (rejecting as unsound cases that fault officers for knocking on a door when they had sufficient evidence to seek a warrant but did not do so, since faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable case imposes an additional requirement to the reasonableness rule that is not found in the United States Constitution).

warrantless entry into the defendant's home to arrest the defendant (who had been involved in a hit and run accident), for driving under the influence. We explained in *Dommel* that the evidence of the defendant's blood alcohol content was crucial to a DUI charge, and could have been lost in the time it took to secure the warrant. Additionally, we noted that the defendant encouraged the police to pursue him into his home when he failed to stop outdoors when commanded by police to do so, but instead ignored the police and entered his home. *Dommel,* 885 A.2d at 1004–1005 (distinguishing *Roland* and *Demshock* in which there was no police pursuit of the suspect from outside the residence; instead, *Roland* and *Demshock* involved intrusions upon occupants who had been in their homes the whole time and whose first encounters with police occurred upon opening their front doors after police officers knocked).

In *Commonwealth v. Bostick,* 958 A.2d 543 (Pa.Super.2008), we held that a warrantless entry was constitutionally valid under both the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution. In *Bostick,* police officers observed defendant involved in ongoing drug activity outside a defendant's residence. In the midst of what appeared to be a drug sale with multiple buyers, the police officers approached. The defendant fled but was apprehended. Jerome Sanders, a co-occupant of defendant's residence, then opened the door of the residence, and upon seeing police, said "oh shit," and threw items, later determined to be marijuana, onto the entryway floor. When police officers entered the residence to secure it and ensure that no one else was present, they observed contraband in plain view. Everyone present in the house was arrested, and a search warrant was subsequently obtained.

We held that the exigency justifying the warrantless entry arose when Jerome Sanders opened the door and saw police, creating a danger that evidence would be destroyed. Moreover, we held that the officers conducted a legitimate protective sweep to secure the premises and persons therein after properly entering the premises under exigent circumstances. Therefore, the defendant's suppression motion was properly denied.

Recently, this Court in *Commonwealth v. Waddell,* 61 A.3d 198 (Pa.Super.2012) addressed the constitutionality of a warrantless entry into a home. In *Waddell,* police officers received information that large quantities of marijuana were being distributed from a residence in Homestead, Pennsylvania. Based on information that a vehicle was transporting marijuana from the Homestead residence, police officers stopped the suspected vehicle, arrested the occupants, and seized marijuana. The officers then proceeded to the Homestead residence, and learned, *en route,* that the occupants of the residence may have been alerted to the police investigation after the earlier traffic stop. Upon arrival at the residence, the officers detected a strong odor of raw marijuana emanating from an open window. The officers knocked on the front door and heard loud movements inside. An officer who had proceeded to the back of the residence then radioed the officers at the front door that a person was jumping out of the window. Fearing that the occupants were destroying evidence, the police kicked the door open and entered the residence. We explained:

> While the distribution of large quantities of marijuana is a serious offense, the instant case did not present a situation where a warrantless entry was neces-

sary to prevent or stop an immediate threat of violence. Police were also not in hot pursuit of a felon whose felonious conduct had been directly observed by police. Furthermore, Appellant did not flee from police into the residence in response to spotting the police, as was the case in *Bostick* ... and *Walker*. Instead, and similar to the case in *Demshock*, Appellant appeared to be unaware that the police were investigating until they arrived at his home to conduct a 'knock and talk.' ...

[The] officers lacked any specific evidence that anyone inside the home was armed. Rather, [the] suspicion that firearms or other weapons might be found within the home was premised upon generalized experience with those that traffic in narcotics, not any particular evidence derived from the investigation in this case....

The evidence certainly surpassed the threshold necessary to establish probable cause after [the officers] detected the smell of marijuana emanating from Appellant's house.... Once the odor of marijuana was detected emanating from the residence, the threshold necessary to establish probable cause to obtain a search warrant was met....

*Waddell, supra* at 215.

Balancing the foregoing factors, we concluded in *Waddell* that while probable cause existed at the time of the warrantless entry, the Commonwealth failed to demonstrate exigent circumstances. In so doing, we reasoned that while there was a risk that evidence would be destroyed, there was no evidence that such destruction of evidence was occurring, as hurried movement does not provide a strong inference that evidence was being destroyed, and there was nothing to indicate there was anyone else in the house after the defendant's exit through the window.

*Waddell* at 217–18. Additionally, we concluded that any exigency that occurred was created by the police, since the loud noises behind the door and the defendant's exit from the window occurred after police knocked on the door. *Id.* at 213–14, 217–18 *quoting Demshock,* 854 A.2d at 557 ("It is well established that police cannot rely upon exigent circumstances to justify a warrantless entry where the exigency derives from their own actions."). Moreover, we reasoned that the police suspected large quantities of marijuana were present inside the residence, and that "large quantities of marijuana cannot be easily disposed of in the same manner as most other controlled substances ... one cannot flush multiple pounds of marijuana down a toilet quickly [and] there was no serious risk that a substantial quantity of marijuana could be destroyed within the residence, while secured from the outside by police pending the arrival of the search warrant, without those surrounding the residence becoming aware of such activities." *Id.* at 217–18. Accordingly, we concluded that the warrantless entry was unlawful and the contraband seized as a result should have been suppressed. *See also Commonwealth v. Berkheimer,* 57 A.3d 171 (Pa.Super.2012) (police officer's warrantless search and seizure was supported by no exigency and constitutionally impermissible where police, acting on a tip that a suspect was in the residence, opened the door of the residence at night while the occupants were asleep, to execute a probation detainer, and detected the odor of marijuana, whereupon the house and its occupants were secured while a search warrant was obtained).

Having examined the foregoing jurisprudence, we now review the trial court's grant of suppression in this case, balancing the right of citizens to be free from unreasonable searches and seizures, and protect-

ing the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime. *Bostick, supra.* We conclude that under the circumstances of this case, the actions of the police officers were supported by both probable cause and exigent circumstances.

■ In the instant case, the police officers arrived at the trailer park to investigate a report of drug activity. Upon their arrival, the officers encountered a woman with red hair who matched the description provided to them as one of the drug-dealing suspects. Fearing that the woman with red hair would alert the occupants of Johnson's trailer to their presence, the officers opted to proceed with their investigation by knocking on the door of the trailer. *See Florida v. Jardines,* —— U.S. ——, 133 S.Ct. 1409, 185 L.Ed.2d 495 (U.S. 2013) *quoting King,* 131 S.Ct. at 1862 ("A police officer not armed with a warrant may approach a home in hopes of speaking to its occupants, because that is 'no more

than any private citizen might do.' "); *Commonwealth v. Gibson,* 536 Pa. 123, 638 A.2d 203, 207 (1994) ("the police have the power to knock on the doors of the citizens of this Commonwealth for investigatory purposes without probable cause").

When the officers ascended the steps of the trailer they detected the odor of marijuana. Now in possession of probable cause to obtain a search warrant, rather than descending the steps directly outside the front door, in the hope that the occupants of the trailer had not seen them, the officers opted to knock on the front door in furtherance of their investigation. It was not unreasonable, under these circumstances, for the officers to knock on the door, rather than wait outside for a search warrant, given that they were already standing in full view on the porch steps, together with their concern that the red-haired woman would alert the occupants of the trailer to their presence, and that the occupants would have the opportunity to dispose of the burning marijuana.[9]

---

9. *See Kentucky v. King,* —— U.S. ——, 131 S.Ct. 1849, 1860–61, 179 L.Ed.2d 865 (2011) (citations omitted):

> Some courts, in applying the police-created exigency doctrine, fault law enforcement officers if, after acquiring evidence that is sufficient to establish probable cause to search particular premises, the officers do not seek a warrant but instead knock on the door and seek either to speak with an occupant or to obtain consent to search. . . .
>
> This approach unjustifiably interferes with legitimate law enforcement strategies. There are many entirely proper reasons why police may not want to seek a search warrant as soon as the bare minimum of evidence needed to establish probable cause is acquired. Without attempting to provide a comprehensive list of these reasons, we note a few.
>
> First, the police may wish to speak with the occupants of a dwelling before deciding whether it is worthwhile to seek authorization for a search. They may think that a short and simple conversation may obviate the need to apply for and execute a war-

rant. Second, the police may want to ask an occupant of the premises for consent to search because doing so is simpler, faster, and less burdensome than applying for a warrant. A consensual search also may result in considerably less inconvenience and embarrassment to the occupants than a search conducted pursuant to a warrant. Third, law enforcement officers may wish to obtain more evidence before submitting what might otherwise be considered a marginal warrant application. Fourth, prosecutors may wish to wait until they acquire evidence that can justify a search that is broader in scope than the search that a judicial officer is likely to authorize based on the evidence then available. And finally, in many cases, law enforcement may not want to execute a search that will disclose the existence of an investigation because doing so may interfere with the acquisition of additional evidence against those already under suspicion or evidence about additional but as yet unknown participants in a criminal scheme.

Moreover, once the police officers knocked on the door, they did not immediately arrest Johnson or intrude into the trailer, but asked to enter, and complied when Johnson refused. (*Compare Demshock, supra*, where, after developing probable cause to believe underage drinking was occurring, the officers knocked on the door and when it opened, immediately entered the residence). Only when Johnson sought to retreat did the officers restrain him, simultaneously informing him that they needed to secure the trailer, pending a search warrant, out of fear that Johnson might destroy the burning marijuana. The police officers' restraint of Johnson occurred in response to the immediacy of the events rapidly unfolding before them. Given the officers' belief that marijuana was actively burning in the residence, the officers had a legitimate concern that evidence would be destroyed if Johnson was allowed to re-enter, an exigency which justified their attempt to secure Johnson. *See McArthur*, 531 U.S. at 331, 121 S.Ct. at 950 (declining to find a warrantless seizure *per se* unreasonable where there was a "plausible claim of specially pressing or urgent law enforcement need, i.e., 'exigent circumstances' ").

When the police officers informed Johnson that he could not re-enter the trailer, Johnson forcibly resisted, which culminated in his arrest. *Compare McArthur, supra* (no evidence that the suspect resisted the police officers after being told he could not go back into his residence unaccompanied; rather, the suspect complied with the police officers' request and re-entered the house two or three times to get cigarettes and make phone calls, while accompanied by a police officer).

We find the urgent circumstances of this case comparable to those in *Walker* and *Bostick* in that, before Johnson attempted to re-enter his trailer, he was fully aware of the presence of police, creating a very real possibility that evidence would be destroyed if he returned indoors. (*Compare Mason, supra*, where there was no indication that the defendant knew of the police presence to spark the destruction of evidence). As in *Walker* and *Bostick*, it was certainly reasonable for the officers here to believe that Johnson might destroy any drugs inside the trailer, and otherwise act to frustrate the police investigation. *Walker*, 836 A.2d at 981. *See also Gillespie, supra* ("securing the premises was an appropriate response to [the defendant's] exercise of his right to demand a warrant; [t]hat exercise, however, triggered the need to secure the premises, for obtaining a warrant takes time").

Moreover, this case is distinguishable from *Waddell, supra*, where the raw marijuana that the officers detected was in the residence, and was of such quantity that it could not be easily destroyed without alerting officers stationed outside the residence. In the present case, the police officers suspected that there was marijuana burning in the trailer, and, unlike *Waddell*, such evidence, e.g. in the form of a marijuana cigarette, is of the type that could have been readily disposed of. Accordingly, we conclude that the officers' restraint of Johnson was supported by both probable cause and exigent circumstances.

In addition to our determination that the restraint of Johnson was justified by exi-

... [L]aw enforcement officers are under no constitutional duty to call a halt to criminal investigation the moment they have the minimum evidence to establish probable cause. Faulting the police for failing to apply for a search warrant at the earliest possible time after obtaining probable cause imposes a duty that is nowhere to be found in the [United States] Constitution.

946

gent circumstances, we conclude that the police officers' subsequent entry into the trailer was permissible. The police officers entered the trailer to conduct a protective sweep after exigent circumstances arose. The officers testified that they did not search the trailer, but simply "looked into" the various rooms to make sure nobody else was present. *See Bostick*, 958 A.2d at 558 (police conducted a legitimate protective sweep where, after exigent circumstances justified the warrantless entry, the officers placed an occupant of the residence in handcuffs to secure him, looked into a bedroom, and conducted a "walk-through" which included opening and closing doors to various rooms of the house to make sure nobody was hiding). In light of the foregoing, we conclude that the trial court erred in finding that the police officers' actions in securing Johnson and the trailer were unsupported by probable cause and exigent circumstances.

The Commonwealth also asserts that because Johnson's arrest was lawful, the trial court erred in holding that Johnson's post-*Miranda* statements to police following his arrest should have been suppressed as fruit of the poisonous tree. Commonwealth Brief at 25–26. We agree.

■■■ "The 'fruit of the poisonous tree' doctrine excludes evidence obtained from, or acquired as a consequence of, lawless official acts." *Commonwealth v. Brown*, 700 A.2d 1310, 1318 (Pa.Super.1997); *Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 527, n. 18 (2005). "A fruit of the poisonous tree argument requires an antecedent illegality." *Commonwealth v. Diggs*, 351 Pa.Super. 444, 506 A.2d 431, 437 (1986). Here, no such antecedent illegality occurred. As previously explained, Johnson was not subject to an unlawful arrest. Rather, the police officers' restraint of Johnson was based on both probable cause and exigent circum-

stances, and after Johnson "became aggressive" and physically resisted the officer's attempts to secure him, Johnson was lawfully arrested. Following Johnson's arrest, the police officers provided him with *Miranda* warnings, which he signed before confessing to the use, possession and distribution of marijuana. Because Johnson was lawfully arrested, his subsequent, post-*Miranda* confession should not have been suppressed since it was not the result on an illegal arrest and therefore did not constitute fruit of the poisonous tree.

For the foregoing reasons, we reverse the trial court's grant of Johnson's motion to suppress the evidence obtained from his trailer and his incriminating statements to the police.

Order reversed. Case remanded. Jurisdiction relinquished.