J-S02045-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| ANTHONY BELL | : | |
| Appellant | : | No. 3055 EDA 2016 |

Appeal from the Judgment of Sentence September 6, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009324-2014

BEFORE:   BOWES, J., NICHOLS, J., and RANSOM, J.[*]

MEMORANDUM BY NICHOLS, J.:                        **FILED JUNE 28, 2018**

Appellant Anthony Bell appeals from the judgment of sentence imposed after the trial court found him guilty of possessing with intent to deliver a controlled substance[1] (PWID), possession of firearm prohibited,[2] and firearms not to be carried without a license.[3]  Appellant claims that the trial court erred in denying his motion to suppress a firearm discovered in his mailbox during a warrantless search.  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S. § 6105.

[3] 18 Pa.C.S. § 6106.

The trial court summarized the evidence presented at the suppression hearing as follows:

Philadelphia Police Officer, Joel Jean, testified that at approximately 7:45 a.m., on the morning of April 16, 2014, he was on routine patrol with his partner when they responded to a radio call of gun shots in the vicinity of the 6300 block of Allman Street in the City of Philadelphia. Officer Jean described the scene as a residential area with a day care center on the corner.

On arriving, they were flagged down by [Appellant], who reported that he lived at the end of the block and that his car had been vandalized while parked in the middle of the block. While talking to him, Officer Jean received another radio call advising him that a 911 caller reported seeing [Appellant] firing a gun just prior to his arrival. [Appellant] was identified by his clothing and the fact that he was talking to the officers when the call came in.

Officer Jean then observed fired shell casings on the ground,[4] and based on his concern for the safety of the neighborhood, he immediately began to search the area for a firearm. Finding none in the immediate vicinity he went to [Appellant's] apartment building, and on looking only into the mailbox assigned to [Appellant], discovered a gun in it. Officer Jean[] testified that the mailbox was mounted on the outside wall of the apartment, was not locked or otherwise secured, and that he gained access by simply opening the lid and looking inside. Rather than removing the gun, he left it in place and secured the area for further investigation.

Philadelphia Police Detective, Richard Antonini, testified that, based on the reports of a gun fired and the discovery of a gun in a mailbox, he obtained a search warrant for both [Appellant]'s mailbox and residence. He included [Appellant]'s residence in the warrant for the purpose of searching for additional ammunition and proof of residence linking [Appellant] to the gun. As a result of his search, Detective Antonini recovered .40 caliber ammunition from [Appellant]'s apartment[,] which matched the caliber of the

_____

4 Police officers recovered three fired cartridge casings from the street. N.T., 9/16/16, at 36.

gun recovered, as well as the fired shell casings he recovered from the street.[5]

Trial Ct. Op., 5/1/17, at 2-4 (record citations omitted).

The suppression hearing transcript also reveals that police officers at 65th and Upland Streets first reported hearing gunshots north of their position. N.T., 9/6/16, at 9, 15, 17. Officer Jean and his partner, Officer Robin Song, were at the police station when they received the report. Officers Jean and Song drove from the station and past 65th and Upland Streets. *Id.* at 18-19. They encountered Appellant at the 6300 block of Allman Street, approximately three or four blocks past the intersection of 65th and Upland Streets. *Id.* Additionally, there was no indication that Appellant was taken into custody or handcuffed at the time when the officers received the tip identifying Appellant as the shooter or while Officer Jean was searching for the weapon. *See id.* at 25 (indicating that Officer Song was "still talking" to Appellant while Officer Jean looked for the gun). Officer Jean testified that when he discovered the firearm, Appellant was "feet" from the mailbox. *Id.* at 14. Appellant was taken into custody after the discovery of the gun. *Id.* at 32.

A criminal complaint was filed the following day, and the Commonwealth filed a criminal information on August 25, 2014. Appellant filed an omnibus pretrial motion, asserting, *inter alia*, that "[t]he searches and seizures were

---

[5] The detective also discovered twenty-four packets of heroin underneath Appellant's mattress.

conducted without a [s]earch [w]arrant and there existed no circumstances warranting the application of any recognized exception to the [s]earch [w]arrant requirement[.]" Omnibus Pretrial Mot., 10/8/14, at 2.

The trial court convened a suppression hearing on September 6, 2016. Appellant's counsel asserted that absent probable cause and a warrant, the search of Appellant's mailbox was unconstitutional. *See* N.T., 9/6/16, at 4-5. Following testimony from Officer Jean and Detective Antonini, the trial court denied Appellant's motion to suppress.

Appellant immediately proceeded to a stipulated nonjury trial. The trial court found Appellant guilty of PWID, person prohibited from carrying a firearm, and carrying a firearm without a license, and immediately thereafter sentenced him to a negotiated aggregate sentence of three-and-one-half to ten years' imprisonment.

Appellant timely appealed the September 6, 2016 judgment of sentence and complied with the trial court's order to file and serve a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The trial court filed a responsive opinion concluding that "sufficient exigent circumstances existed for Officer Jean to conduct a limited search of the area to secure [Appellant's] gun." Trial Ct. Op. at 7. The court further noted that the officer's "intrusion into [mailbox] was minimal, as he merely lifted the unsecured lid to look inside." *Id.*

Appellant presents the following question on appeal: "Whether the court improperly denied the motion to suppress physical evidence after an illegal search and seizure?" Appellant's Brief at 5.

Appellant contends that the trial court erred in two respects. First, Appellant argues that the police lacked reasonable suspicion or probable cause to open Appellant's mailbox. *Id.* at 8, 10. Second, Appellant argues that the Commonwealth failed to establish exigent circumstances warranting the intrusion into his mailbox. *Id.* at 8, 11. Assuming, without deciding,[6] that Appellant possessed a reasonable expectation of privacy in his mailbox, we discern no merit to Appellant's arguments.

The principles governing our review are as follows:

> Our analysis . . . begins with the presumption that where a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible. If the trial court denies the motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn therefrom are free from error. In so doing, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

---

[6] The concurrence concludes that Appellant lacked a reasonable expectation of privacy in the mailbox. Notwithstanding the concurrence's scholarly research, this issue is not properly before this Court. *See Commonwealth v. Enimpah*, 106 A.3d 695, 702 (Pa. 2014) (holding that the Commonwealth bears the initial burden of placing a defendant's reasonable expectation of privacy at issue). Moreover, the concurrence arrives at its conclusion without the benefit of focused arguments from the parties.

*Commonwealth v. Bowmaster*, 101 A.3d 789, 792 (Pa. Super. 2014)

(citation omitted).

> The law of search and seizure remains focused on the delicate balance of protecting the right of citizens to be free from unreasonable searches and seizures and protecting the safety of our citizens and police officers by allowing police to make limited intrusions on citizens while investigating crime. It is well established that probable cause alone will not support a warrantless search or arrest in a residence unless some exception to the warrant requirement is also present. Absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists.

*Commonwealth v. Johnson*, 68 A.3d 930, 935 (Pa. 2013) (citations, emphasis, and some punctuation omitted).

Appellant first argues that probable cause was lacking because he was "lawfully on the street" and "flagged the officer down" for assistance. Appellant's Brief at 10. Appellant notes "[t]here was no information who had called in the 'flash information' and how reliable it was."[7] *Id.* Appellant appears to analogize the present case to the "man with a gun" cases in which officers detain an individual based on an uncorroborated anonymous tip. *See id.*; *cf. Commonwealth v. Mackey*, 177 A.3d 221, 231-32 (Pa. Super. 2017) (holding that the seizure of an individual was not supported by an uncorroborated anonymous tip stating that the individual, who was identified by gender, race, and clothing, was on a specific bus and had a gun).

---

[7] "A flash information is based on a report from the initial officers to investigate the scene of a crime and is broadcast to other police units in the district." *Commonwealth v. Jackson*, 519 A.2d 427, 431 n.3 (Pa. Super. 1986).

When reviewing the trial court's probable cause determination, we are mindful that probable cause will be found to exist

> where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it. In determining whether probable cause exists, we must consider the totality of the circumstances as they appeared to the arresting officer. Additionally, the evidence required to establish probable cause for a warrantless search must be more than a mere suspicion or a good faith belief on the part of the police officer.

***Commonwealth v. Griffin***, 24 A.3d 1037, 1042 (Pa. Super. 2011) (citations and some punctuation omitted).

Instantly, the record established that Officers Jean and Song were responding to a report of gunshots made by fellow officers involved in a separate incident at 65th and Upland Streets. N.T., 9/6/16, at 15, 18-19. Officers Jean and Song proceeded from the station house, drove past the officers who initially reported hearing the gunshots, and then encountered Appellant approximately three or four blocks north of 65th and Upland Streets. *Id.* at 17-19. Appellant initiated contact with the officers by flagging them down and asserting that his car was vandalized. *Id.* at 9-10. While Appellant was talking to the officers, the officers received an anonymous tip that the person the officers were speaking to, *i.e.*, Appellant, had fired a handgun before the officers arrived. *Id.* at 10-11. Officer Jean began investigating the shooting and observed fired cartridge casings on the street where they were talking with Appellant about the vandalism. *Id.* at 11.

Based on this record, there was ample basis for the trial court to find probable cause that Appellant had fired the shots heard by the officers. *See Griffin*, 24 A.3d at 1042. Moreover, there was independent corroborative evidence establishing that gunshots were fired and that Appellant, who was standing near several fired cartridge casings, was responsible for the gunshots. Therefore, Appellant's assertion that he was unlawfully detained without probable cause lacks merit. Thus, Appellant's first argument warrants no relief.

Second, Appellant argues that the Commonwealth failed to establish exigent circumstances justifying Officer Jean's opening of the mailbox. Appellant focuses on Officer's Jean's testimony that there was a daycare center and "the last thing [he] wanted is a child to find that hand gun before we do." *See* N.T., 9/16/16, at 12. Appellant asserts:

> The firearm was in a closed mailbox not exposed to the public. It is . . . incredible to believe that children would open a closed mailbox on the street while the police were obtaining a warrant. There were pursuant to the police officer's testimony at least two officers securing the area where the Appellant was located.

Appellant's Brief at 11.

With respect to exigent circumstances,

> [v]arious factors need to be taken into account to assess the presence of exigent circumstances; for example: (1) the gravity of the offense; (2) whether the suspect is reasonably believed to be armed; (3) whether there is a clear showing of probable cause; (4) whether there is a strong reason to believe that the suspect is within the premises being entered; (5) whether there is a likelihood that the suspect will escape if not swiftly apprehended; (6) whether the entry

> is peaceable; (7) the timing of the entry; (8) whether there is hot pursuit of a fleeing felon; (9) whether there is a likelihood that evidence will be destroyed if police take the time to obtain a warrant; and (10) whether there is a danger to police or other persons inside or outside of the dwelling to require immediate and swift action.
>
> Essentially, the exigent circumstances exception involves balancing the needs of law enforcement against individual liberties and/or rights. Some factors will outweigh others in a given case.

***Johnson***, 68 A.3d at 937 (citations and some punctuation omitted). All factors "will not exist in every particular case, but that does not render the situation non-exigent." ***Commonwealth v. Stewart***, 740 A.2d at 712, 718 (Pa. Super. 1999).

"[P]olice bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests." ***Id.*** (citation omitted). Furthermore, "the Commonwealth must present clear and convincing evidence that the circumstances surrounding the opportunity to search were truly exigent, and that the exigency was in no way attributable to the decision by police to forego seeking a warrant." ***Commonwealth v. Rowe***, 984 A.2d 524, 526 (Pa. Super. 2009) (citation omitted).

Instantly, the trial court concluded that there were exigent circumstances based on the following factors:

> [Officer Jean] arrived on the scene shortly after the reported shooting and had reason to believe [Appellant] was the shooter. In initiating the search, Officer Jean testified that he was concerned for "the safety of the public, also there was a daycare on the corner. So the last thing we wanted is a child to find that handgun be ore we do." (N.T., 9/16/16[, at 12]) Being unable to locate the gun in the area of the shell casings, it was reasonable for him to search in the vicinity of [Appellant's] residence. The

Court recognizes that although [Appellant] has reasonable expectation of privacy in his own mailbox, it is not absolute and is subject to exigent circumstances. Furthermore, Officer Jean limited his search to [Appellant's] mailbox and his intrusion into it was minimal, as he merely lifted the unsecured lid to look inside. On discovering the gun he immediately secured it from further intrusion, pending obtaining a search warrant.

Trial Ct. Op. at 7.

Following our review, we agree with the trial court's conclusion that exigent circumstances existed under the unique facts of this case. There was clear probable cause that Appellant engaged in conduct that threatened public safety, namely, firing several shots in a residential area with a daycare center nearby. The incident and subsequent search occurred around 7:45 a.m. on April 16, 2014, which was a weekday. Although Officer Jean and Officer Song began investigating the shooting after receiving the anonymous tip, there was no evidence that Appellant was handcuffed. Additionally, the trial court heard testimony that Appellant was associated with the mailbox and was within "feet" of the mailbox. Lastly, as the trial court noted, the officer's intrusion was limited and peaceful.

Thus, having examined the totality of the circumstances of this case, we conclude that the trial court properly found that the investigation and search was reasonable and that exigent circumstances justified the opening of Appellant's mailbox. Accordingly, no relief is due on Appellant's second argument.

Judgment of sentence affirmed.

Judge Bowes joins the memorandum.

Judge Ransom files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/28/18