J-A16014-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| FRANK SANTOS, | |
| Appellee | No. 2249 EDA 2014 |

Appeal from the Order July 9, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0001509-2013

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED JUNE 25, 2015**

The Commonwealth appeals from the trial court's order granting the motion to suppress evidence filed by Appellee, Frank Santos.[1]  After review, we are constrained to vacate the order of suppression and remand for proceedings consistent with this memorandum.

The relevant factual and procedural history of this case is as follows. On June 1, 2012, at approximately 7:45 p.m., Police Officer Jason Branyan was on duty working with a narcotics enforcement team in the 2800 block of

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] "The Commonwealth may take an appeal of right from an order that does not end the entire case if it certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution."  **Commonwealth v. Lark**, 91 A.3d 165, 166 n.1 (Pa. Super. 2014), *appeal denied*, 105 A.3d 735 (Pa. 2014) (citations omitted).  The Commonwealth has included such a certification in this case.  (**See** Notice of Appeal, 8/08/14, at 1).

Cottman Avenue in Philadelphia. They set up undercover surveillance in a parking lot known to police as a location where narcotics transactions, thefts, and robberies regularly take place. At that time, Officer Branyan was a nine-year veteran of the police force, and he had made approximately one thousand narcotics arrests, with twenty arrests in this specific parking lot. His narcotics enforcement colleagues had made approximately forty to sixty arrests in this parking lot.

At approximately 8:20 p.m., Officer Branyan observed a dark-colored Acura with New Jersey tags pull into the parking lot. It parked two rows in front of him, directly facing him, at a distance of approximately fifty feet. A few minutes later, a Toyota Rav4, driven by Appellee, pulled into the parking lot next to the Acura. The vehicles were in a well-lit area of the parking lot, and the driver's side of Appellee's vehicle faced the driver's side of the Acura. Appellee got out of his vehicle with a clear plastic bag in his hand, and he entered the rear driver's side of the Acura. Moments later, he exited the Acura and quickly went back into his own vehicle.

The Acura began to leave the parking lot at a normal rate of speed, and Officer Branyan gave out a flash to stop it. Sergeant Cerruti[2] stopped the Acura towards the front of the parking lot and recovered twenty yellow oxycodone pills in a clear plastic bag from the cup holder. The sergeant

_____

[2] Our review of the record did not reveal Sergeant Cerruti's first name.

radioed that the stop of the Acura "was a positive." (N.T. Suppression Hearing, 7/09/14, at 11).

At Officer Branyan's instruction, Police Officer Michael Schaffer then stopped Appellee's vehicle, which was still parked in the parking lot. Appellee got out of the vehicle and was placed in handcuffs.[3] Officer Shaffer recovered $160.00 from the driver's seat of Appellee's vehicle and $2,241.00 from his person. The officer also recovered four amber pill bottles from the center console of Appellee's vehicle. The first bottle contained 281 oxycodone pills; the second bottle contained fourteen diazepam pills; the third bottle contained five oxycodone pills; and the fourth bottle contained only yellow residue. The three bottles containing pills bore the name of Appellee's girlfriend, Amanda Fuscia; the empty bottle was not labeled.

Appellee was charged with possession with intent to deliver a controlled substance and possession of a controlled substance.[4] On May 21, 2013, he filed a motion to suppress evidence. On July 9, 2014, the trial court held a hearing at which Appellee argued that police arrested him

_____

[3] It is not clear from the record which officer placed Appellee in handcuffs. (**See** Trial Court Opinion, 10/24/14, at 3-4). Officer Branyan testified that, when he reached Appellee's vehicle, Appellee was already in handcuffs. (**See** N.T. Suppression Hearing, 7/09/14, at 28-29). However, Officer Schaffer testified that he believed Officer Branyan placed Appellee in handcuffs. (**See id.** at 39).

[4] 35 P.S. §§ 780-113(a)(30) and (a)(16), respectively.

without probable cause. (*See id.* at 6). On that same date, the trial court entered its order granting the motion. On July 15, 2014, the court entered findings of fact and conclusions of law on the record, stating that Appellee's warrantless arrest lacked the requisite probable cause. (*See* N.T. Findings of Fact and Conclusions of Law, 7/15/14, at 5). This timely appeal followed.[5]

The Commonwealth raises the following issue for review:

Where an experienced police officer, with thousands of narcotics arrests, was conducting surveillance of a parking lot notorious for narcotics activity—a location where the officer had personally made 20 prior arrests—recognized a probable drug transaction unfolding in front of him, did the [trial] court, which disregarded the officer's relevant experience and the crime-ridden character of the surveillance location, err in concluding there was no probable cause to arrest [Appellee]?

(Commonwealth's Brief, at 3).[6]

Our standard of review is as follows:

When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

---

[5] The Commonwealth filed a statement of errors complained of on appeal contemporaneously with its notice of appeal on August 8, 2014. *See* Pa.R.A.P. 1925(b). The trial court entered its opinion on October 24, 2014. *See* Pa.R.A.P. 1925(a).

[6] Appellee did not file a brief.

***Commonwealth v. Johnson***, 68 A.3d 930, 934 (Pa. Super. 2013) (citation omitted).

In its sole issue on appeal, the Commonwealth contends that the trial court erred in granting Appellee's motion to suppress where the arrest was legal and supported by probable cause. (***See*** Commonwealth's Brief, at 12-22). It maintains that the totality of the circumstances of this case, including the officers' relevant experience and knowledge of this particular parking lot as notorious for drug activity, coupled with Appellee's unusual conduct, established probable cause. (***See id.*** at 11, 15-16). After review of the record, we are constrained to agree.

Our Supreme Court has stated:

> [L]aw enforcement authorities must have a warrant to arrest an individual in a public place unless they have probable cause to believe that 1) a felony has been committed; and 2) the person to be arrested is the felon. A warrant is also required to make an arrest for a misdemeanor, unless the misdemeanor is committed in the presence of the police officer. The legislature, however, has authorized law enforcement officers to make warrantless arrests for misdemeanors committed outside their presence in certain circumstances.
>
> In order to determine whether probable cause exists to justify a warrantless arrest, we must consider the totality of the circumstances. Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed, and must be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of the arrest guided by his experience and training. . . .

> Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a **probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Commonwealth v. Martin***, 101 A.3d 706, 721 (Pa. 2014) (citations and quotation marks omitted; emphasis in original).

"In determining whether probable cause exists: The time is important; the street location is important; the use of a street for commercial transactions is important; . . . the movements and manners of the parties are important." ***Commonwealth v. Delvalle***, 74 A.3d 1081, 1086 (Pa. Super. 2013) (citation omitted). Further, a police officer's experience is a relevant factor in determining probable cause, where there is a nexus between the experience and the observed behavior. ***See Commonwealth v. Thompson***, 985 A.2d 928, 935-36 (Pa. 2009); ***see also Delvalle***, ***supra*** at 1085-86.

In the instant case, the relevant facts and circumstances were that police officers with extensive experience making narcotics arrests observed a night-time interaction in a parking lot known for narcotics sales. (***See*** N.T. Suppression Hearing, 7/09/14, at 7-10). Appellee parked with the driver's side of his vehicle along the driver's side of the waiting Acura, and he exited

his vehicle with a clear plastic bag in his hand. (*See id*. at 11, 15, 17, 23). He entered the backseat of the Acura and quickly exited a few moments later, jumping back into his own vehicle. (*See id*. at 11-13, 24). Police immediately stopped the Acura and recovered twenty oxycodone pills in a clear plastic bag from the cup holder. (*See id*. at 11-12, 25). Only after police stopped the Acura and recovered oxycodone pills from the suspected buyer did they stop Appellee, who was still parked in the parking lot known for drug activity. (*See id*. at 11, 15-16, 25-27).

Viewing the totality of the circumstances, and mindful of the above considerations, we conclude that the facts of this case "are sufficient to warrant a man of reasonable caution in the belief that [Appellee] has committed . . . a crime[,]" *Martin*, *supra* at 721, through his involvement in the suspected drug sale. Thus, the trial court erred in determining that police lacked probable cause to arrest Appellee. *See Johnson*, *supra* at 934. Accordingly, we vacate the order of suppression, and remand to the trial court for further proceedings consistent with this memorandum.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/2015

- 7 -