J-S43017-19

2020 PA Super 9

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY BOWENS | : | |
| | : | |
| Appellant | : | No. 341 MDA 2018 |

Appeal from the Judgment of Sentence Entered October 23, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007390-2016

BEFORE:    GANTMAN, P.J.E., DUBOW, J., and STEVENS*, P.J.E.

OPINION BY DUBOW, J.:                                    **FILED JANUARY 17, 2020**

Appellant, Terry Bowens, appeals from the Judgment of Sentence of 15¾ to 31½ years' incarceration entered after a jury found him guilty of two counts of Possession With Intent to Deliver ("PWID"), and one count each of Conspiracy to PWID, Receiving Stolen Property, Firearms Not to be Carried without a License, and Possession of Drug Paraphernalia.[1]  He challenges, *inter alia*, the denial of his suppression motion and the sufficiency of the evidence supporting the possession element of his convictions.  After careful review, we conclude the trial court erred in failing to suppress the evidence obtained from Appellant's cell phone after the search warrant had expired. In addition, we conclude as a matter of law that the Commonwealth failed to prove that Appellant constructively possessed the items found in the locked glove box.

_____

[1] 35 P.S. § 780-113(a)(16) and (30); 18 Pa.C.S. § 903; 18 Pa.C.S. § 3925(a); 18 Pa.C.S. § 6106(a)(1), and 35 P.S. § 780-113 (a)(32), respectively.

_____

* Former Justice specially assigned to the Superior Court.

We, thus, reverse the denial of the motion to suppress and convictions of PWID, Receiving Stolen Property, Firearms Not to be Carried without License, and Possession Drug Paraphernalia.

We glean the following relevant facts from the certified record. On October 12, 2016, Pennsylvania State Police Trooper Wesley Johnson observed a vehicle abruptly change lanes from the passing lane to the right lane, nearly hitting another vehicle. After activating the emergency lights on his vehicle, Trooper Johnson observed Maxi Echevarria, the driver of the vehicle, reaching over towards the glove box as he pulled the car onto the shoulder of the road. Appellant was sitting in the front passenger seat. While speaking with the men in the car, Trooper Johnson noticed that they were acting nervously. Mr. Echevarria informed the officer that the car belonged to his girlfriend in New Jersey. He also stated that he and Appellant were travelling from York City to Lancaster, and then on to Chester or Philadelphia.

While Trooper Johnson was speaking to Appellant and Mr. Echevarria on the side of the road, another officer learned of arrest warrants outstanding for both men. Trooper Johnson then took the men into custody and took possession of their cell phones. Trooper Johnson set Appellant's phone to airplane mode and placed it inside an aluminum foil-lined pouch for safekeeping.

Trooper Johnson then impounded the vehicle and conducted an inventory search. The glove box was locked; both Appellant and Mr. Echevarria denied having the key to open the glove box and denied knowing

- 2 -

its contents.[2] Trooper Johnson contacted Mr. Echevarria's girlfriend, located in New Jersey, who gave him permission to search the glove box, stating that Mr. Echevarria had the key.

Trooper Johnson nonetheless obtained a search warrant for the glove box on October 13, 2016, and discovered, *inter alia*, heroin, drug paraphernalia, and two firearms. Consequently, on October 14, 2016, Trooper Johnson obtained a search warrant for the cell phones and provided it that day to Detective Mark Baker of the Northern York County Regional Police Department, a forensic expert in the field of cell phone data extraction. The search warrant expired on October 16, 2016, at 10:45 AM.

On October 20, 2016, Detective Baker notified Trooper Johnson that he had completed the cell phone extraction, which revealed text messages between Mr. Echevarria and Appellant using language common to the illicit drug trade. Appellant's phone also contained photographs of cash, and of a handgun similar to that found in the glove box.

The Commonwealth charged Appellant with the above offenses. Appellant and co-defendant Mr. Echevarria filed a pre-trial Omnibus Motion in which Appellant sought, *inter alia*, suppression of the evidence seized from his

---

[2] Trooper Johnson particularly noticed that Mr. Echevarria became very nervous when the glove box came up in their conversation. **See** N.T. Trial, 4/6/17, at 15. Police officers later discovered the key to the glove box "secreted in" Mr. Echevarria's sweatshirt. N.T. Suppression, 2/28/17, at 14-15, 81.

cell phone because the search warrant expired before the police searched his phone.

After the hearing, the suppression court denied the Motion in part and granted it in part. The court found that Detective Baker had conducted the cell phone search on October 20, 2016, four days after the warrant had expired. However, the court concluded that because the phone had been in police custody since its seizure on October 12, 2016, and frozen in airplane mode, there were no "staleness concerns that would be present in other factual scenarios where the probable cause determination would have expired." Suppression Ct. Op., dated 6/6/17, at 10. The court also found that the delay in searching the phone "was a product[] of coordination delays between the police possessing the software and [the] expertise to do the job." *Id*. at 11. The court directed, however, that any information that was sent to the phone after 10:45 AM on October 16, 2016, *i.e.*, after the warrant expired, would be inadmissible at trial. *Id*.

Appellant's trial commenced.[3] The Commonwealth presented testimony from Trooper Johnson, Detective Baker, and Detective Craig Fenstermacher, an investigator with the York County District Attorney's Office and an expert in the field of drug interdiction. Trooper Johnson testified regarding the circumstances leading up to and including the traffic stop. The Commonwealth

---

[3] Mr. Echevarria entered a guilty plea immediately before the start of the trial. He did not testify at Appellant's trial.

introduced the cell phone extraction report through Detective Baker's testimony regarding the method of extraction utilized. The report contained a packet of printouts showing, *inter alia*, approximately 4000 images extracted from Appellant's cell phone, including text messages and photos.

Following Officer Baker's testimony, the court ruled on the authentication and admissibility of 44 text messages. Detective Fenstermaker then testified regarding the admitted messages and the drug language used therein. Trooper Johnson testified regarding the synchronicity of the text messages between Mr. Echevarria's and Appellant's cellphones. N.T. Trial at 234-35.

The jury found Appellant guilty of all of the above charges. The court ordered a pre-sentence report and subsequently sentenced Appellant to an aggregate term of 15 years 9 months' to 31 years 6 months' incarceration.

Appellant filed a timely Post-Sentence Motion challenging the discretionary aspects of his sentence, which the trial court denied. He then filed this timely appeal.[4]

In his Brief, Appellant raises the following issues for our review:

1. Did the trial court err in failing to suppress the fruits of a search of a cell phone backed with a warrant that had expired by the time the search was executed?

_____

[4] Appellant submitted a timely Pa.R.A.P. 1925(b) Statement; the trial court filed a Rule 1925(a) Opinion.

2. Did the court err in finding incriminating text messages had been authenticated for use against [Appellant] where the messages did not reveal their author and evidence showed others used the phone in question?

3. Was there insufficient evidence that [Appellant] possessed the guns, drugs, and paraphernalia found in the locked glove compartment of the car he was riding in where all indicia of ability and intent to exercise dominion and control over these items related to the driver?

4. Was there insufficient evidence that [Appellant] knew or believed the Ruger handgun was probably stolen where there was no evidence of when, where, or how the gun was stolen and its serial number was intact?

5. Did the sentencing court abuse its discretion in imposing three times the recommended incarceration, including multiple consecutive terms, based in part on convictions that were already included in [Appellant's] prior record score and the unsupported notion that [Appellant] was the leader in a criminal enterprise?

Appellant's Brief at 5.

**Warrantless Search**

Appellant first challenges the denial of his Motion to Suppress the information obtained from his cell phone, contending that because the search warrant expired four days before Officer Baker extracted the data on October 20, 2016, the search was "functionally warrantless" and the court should have suppressed the evidence. *See* Appellant's Brief at 28-30. We agree.

In reviewing the trial court's decision to deny a motion to suppress, we must determine "whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Freeman***, 150 A.3d 32, 34 (Pa. Super. 2016). ***See also Commonwealth v. Batista***, __ A.3d ___, ____ , 2019 WL

4727297 at *6 (Pa. Super. filed Sept. 27, 2019) (observing that "our standard of review is highly deferential with respect to the suppression court's factual findings and credibility determinations") (citation omitted)). The conclusions of law of the court below are subject to plenary review on appeal. **Commonwealth v. Hopkins**, 164 A.3d 1133, 1136 (Pa. 2017).

Further, "[b]ecause the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Freeman**, **supra** at 34. We may not consider evidence outside the suppression hearing record. **In Re L.J.**, 79 A.3d 1073, 1085 (Pa. 2013).

Our rules of criminal procedure provide numerous rules pertaining to search warrants to protect our constitutional right to be free from unreasonable government intrusions into our private affairs. **See** Pa.R.Crim.P. 200-212; U.S. Const. amend. IV; PA Const. Art.1 §8. As the Pennsylvania Supreme Court recently noted in **Commonwealth v. Fulton**, 179 A.3d 475 (Pa. 2018), "[s]tate rules often implicate constitutional values, and the violation of a state rule may rise to the level of a federal constitutional violation," and "a more relaxed harmless error standard for errors perceived as violations of state rules, but which might also be violations of the federal Constitution, would leave constitutional values inadequately protected." **Id.** at 493 (quoting **Commonwealth v. Story**, 383 A.2d 155, 163 (Pa. 1978)).

Relevant to this appeal, Pa.R.Crim.P. 205(A)(4) provides that the authority issuing the search warrant must direct that the search be conducted "within a specified period of time, not to exceed 2 days from the time of issuance." Our judicially created rules do not provide any exceptions to the requirement that the search be conducted within the mandated period of time contained within a search warrant. Thus, because Rule 205 specifically "implicate[s] constitutional values," the failure to adhere to that time-limitation in conducting the search "rises to the level of a federal constitutional violation." *Fulton*, *supra* at 493.

In *Fulton*, the Court held that accessing any information from a cell phone without a warrant violates the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. *Id.* at 479, 489. Relying on the United States Supreme Court's decision in *Riley v. California* and *United States v. Wurie*, 573 U.S. 373 (2014), our Supreme Court observed, "that in the absence of an applicable exception, **any search** of a cell phone requires a warrant. This is because, like one's home, an individual's expectation of privacy is in the cell phone itself, not in each and every piece of information stored therein." *Fulton*, *supra* at 487 (emphasis in original).

"[P]robable cause alone will not support a warrantless search." *Commonwealth v. Johnson*, 68 A.3d 930, 935 (Pa. Super. 2013). Thus, "absent consent or exigent circumstances," police officers may not conduct a search without a warrant "**even** where probable cause exists." *Id*. (citation

omitted). "Evidence of any kind obtained by police through an unlawful search may not be used in any respect, including as evidence at trial against the subject of the search." ***Fulton***, ***supra*** at 489 (citing ***Wong Sun v. United States***, 371 U.S. 471, 484-85 (1963)).

Here, the search warrant expired on October 16, 2016, at 10:45 AM. The trial court found, as a matter of fact, that the search occurred on October 20, 2016, four days after the warrant had expired. Accordingly, Detective Baker conducted the cell phone search without a valid warrant.

Where a search occurs without a warrant, the evidence obtained therefrom must be excluded, unless the evidence was obtained under one of the exceptions to warrant requirements. ***See***, ***e.g.***, ***Commonwealth v. Roland***, 637 A.2d 269 (Pa. 1994) (exigent circumstances: where the loss of evidence before warrant can be obtained is likely); ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014) (adopting the federal rule where exigent circumstance exists based solely on the mobility of the vehicle); ***Commonwealth v. McCree***, 924 A.2d 621 (Pa. 2007) (plain view exception); ***See also Commonwealth v. Edmunds***, 586 A.2d 887, 888 (Pa. 1991) (holding that the good-faith exception to the exclusionary rule does not exist in Pennsylvania).

In the instant case, there are no applicable exceptions to the exclusionary rule. The cell phone data was not in plain view, and because the cell phone was in PSP custody and set in airplane mode, exigency and mobility

of the evidence were not a concern. The trial court, thus, correctly determined that the police officer improperly conducted the search without a warrant.

Notwithstanding that determination, the suppression court concluded that the error was harmless because there were no staleness concerns with respect to the probable cause determination. *See* Tr. Ct. Order and Supporting Memorandum, 6/6/17 at 9; Rule 1925(a) Opinion, 3/27/19, at 11-12. However, as noted above, "probable cause alone will not support a warrantless search." *Johnson*, 68 A.3d at 935.

Moreover, "an error cannot be held harmless unless the appellate court determines that the error could not have contributed to the verdict. Whenever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless." *Fulton*, *supra* at 493 (citations omitted). In considering whether an error is harmless, the *Fulton* court emphasized the following factors courts must consider:

> Harmless error exists if the state proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted **and uncontradicted** evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

*Id.* at 493 (emphasis in original; citations omitted) (relying on *Story*, 383 A.2d at 164-167).

In the instant case, the suppression court did not consider the above analysis in reaching its conclusion that the error was harmless. The evidence

from the cell phone extraction was the only evidence the Commonwealth presented to support its conspiracy charge. Accordingly, applying the first factor of the harmless error analysis to the facts of this case, there is no doubt that the error of admitting the evidence prejudiced Appellant and the prejudice was not *de minimus*.

The Commonwealth raises, for the first time in its Brief, that the error was a mere "technical violation of the rules of criminal procedure," relying on a factually distinguishable case. Commonwealth's Brief at 25 (citing ***Commonwealth v. Knoble***, 188 A.3d 1189 (Pa. Super. 2018), *appeal denied*, 198 A.3d 332 (Pa. 2018)).[5] We disagree with the Commonwealth's characterization: the violation here was the failure to follow a court's order to conduct the search by October 16, 2016, at 10:45 AM. The failure to abide by a search warrant's requirements—requirements that are judicially-mandated

_____

[5] In ***Commonwealth v. Knoble***, 188 A.3d 1199 (Pa. Super. 2018), *appeal denied*, 198 A.3d 332 (Pa. 2018), police officers conducted their extraction of cell phone data pursuant to a valid warrant within the time indicated on the warrant. Nine months later, the appellant requested another copy of the data, even though the data had already been provided to him. Due to the loss of the stored data from the forensic police officer's hard drive, the officer conducted another extraction in order to fulfill the appellant's request. Because the extraction software had been automatically updated during the nine-month period, the second extraction recovered incriminating video that had not been recovered in the first extraction. The appellant unsuccessfully sought to exclude that video, raising a claim of unreasonable governmental intrusion. Because the second extraction occurred at the behest of the appellant, ***Knoble*** is not dispositive here.

so as to ensure protection of constitutional rights—are not "technical violations of the rules of criminal procedure."

Accordingly, because the police officers here conducted a warrantless search of the cell phone, and the facts present no exception to the exclusionary rule, we conclude the court erred in admitting the evidence extracted from the cell phone.[6]

**Constructive Possession**

Appellant next asserts that the Commonwealth failed to provide sufficient evidence of possession to support his convictions of the drug and firearms offenses. He contends that, because police officers recovered no drugs, drug paraphernalia, or firearms from his person, and he did not have access to the contents of the locked glove box because he did not have the key, the Commonwealth failed to prove the "essential element of possession" and, therefore, each of his convictions in which possession is an element should be vacated. Appellant's Br. at 43. Based on our review and application of precedential case law, we agree.

Evidentiary sufficiency is a question of law; thus, our standard of review is *de novo*, and our scope of review is plenary. ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013). In determining whether the evidence was sufficient to support a verdict, we view the evidence and all reasonable

---

[6] Because the trial court erred in admitting the evidence extracted from the cell phone, we need not review Appellant's second issue challenging the trial court's authentication of the admitted text messages and photos.

inferences to be drawn therefrom in the light most favorable to the verdict winner, the Commonwealth herein. *Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005) (citations and internal quotations omitted).

Appellant challenges the possession element of each of the crimes charged. To convict a person of PWID, the Commonwealth must prove beyond a reasonable doubt that the person possessed a controlled substance with the intent to deliver it and without legal authorization to do so. 35 P.S. § 780-113(a)(30). *See Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. 2005). A person will be guilty of the offense of Firearms Not to be Carried Without a License if the individual carries a firearm "concealed on or about his person" without a valid license. 18 Pa.C.S. § 6106(a). With respect to the drug paraphernalia conviction, 35 P.S. § 780-113(32) prohibits one from, *inter alia*, possessing drug paraphernalia for the purpose of " packing, . . . storing, containing, concealing . . . a controlled substance." Drug paraphernalia includes bags used to package and store illegal drugs. *Commonwealth v. Torres*, 617 A.2d 812, 815-16 (Pa. Super. 1992).

It is well-settled that when an individual is found guilty of possessing contraband which was not found on his person, as in the case now before us, the Commonwealth is required to prove that he had constructive possession

- 13 -

or joint constructive possession of the contraband. ***Bricker***, 882 A.2d at 1014. Constructive possession is a legal fiction; it is an inference from a set of facts that the defendant more likely than not had control of contraband that was not found on his person. ***Commonwealth v. Mudrick***, 507 A.2d 1212, 1213 (Pa. 1986). The Pennsylvania Supreme Court defines constructive possession as "conscious dominion," which is "the power to control the [contraband] and the intent to exercise that control." ***Commonwealth v. Johnson***, 26 A.3d 1078, 1093 (Pa. 2011) (citation and quotation omitted).

However, a person's presence in a place where the drugs are found, standing alone, will not establish constructive possession. ***Commonwealth v. Thompson***, 779 A.2d 1195, 1199 (Pa. Super. 2001). ***See Commonwealth v. Valette***, 613 A.2d 548, 550 (Pa. 1992) (noting that "[i]t is well settled that facts giving rise to mere 'association,' 'suspicion' or 'conjecture' will not make out a case of constructive possession." (citations omitted)). The Commonwealth must prove some additional factor linking the defendant to the drugs, such as finding the contraband in plain view, finding the contraband within the defendant's personal effects or in a place where only the defendant had access, and observing the defendant acting suspiciously before or during the arrest. ***See, e.g.***, ***Commonwealth v. Kirkland***, 831 A.2d 607, 611 (Pa. Super. 2003) (concluding that the appellant had constructive possession of drugs which were found in plain view in the back seat of a vehicle); ***Thompson***, ***supra*** at 1199-1200 (concluding that the appellant's furtive movements, along with his proximity to the cocaine and his admission that

other drugs could be found in the location where the cocaine was found, evidenced joint constructive possession); *Commonwealth v. Micking*, 17 A.3d 924, 926 (Pa. Super. 2011) (concluding that testimony regarding a defendant's display of extreme nervousness is admissible as evidence of consciousness of guilt in a constructive possession determination).

This Court has reversed convictions after concluding, as a matter of law, that the Commonwealth did not present sufficient evidence to prove constructive possession. For instance, in *Commonwealth v. Boatwright*, 453 A.2d 1058 (Pa. Super. 1982), police responded to a tip about three suspicious men in an automobile. When they arrived on the scene, they observed the defendant in the front passenger seat, one individual in the driver's seat, and one in the back seat. Police observed the defendant's body moving to the left-rear of the vehicle, where soon thereafter, they discovered a firearm. The defendant was convicted of a firearm offense based on his constructive possession of that firearm. This Court reversed, reasoning:

> Because the firearm was not found on [Boatwright's] person, he could properly be convicted only if the Commonwealth proved joint constructive possession with the other occupants of the vehicle. To do this, the Commonwealth must present evidence to show that [Boatwright] had both the power to control the firearm and the intent to exercise that control. Mere presence at the scene where the gun was found is not sufficient. The only evidence other than mere presence was [an officer's] testimony that [Boatwright] made a movement toward the left rear of the vehicle. This evidence cannot provide proof beyond a reasonable doubt that [Boatwright constructively] possessed the firearm in question.

*Id*. at 1059 (citations omitted).

In *Commonwealth v. Davis*, 280 A.2d 119 (Pa. 1971), our Supreme Court concluded that the defendant was a "mere visitor" to the building in which stolen dresses were seized. *Id*. at 121. The Court found that the Commonwealth failed to present sufficient evidence that the appellant had ever "received" the stolen goods because his paramour, who was not a co-defendant, had the only key to the locked cupboard where the stolen goods were discovered. The Commonwealth had presented no evidence that the appellant had access to the key or control over the stolen goods. *Id*.[7]

In the case now before us, the trial court addressed Appellant's constructive possession challenge by explaining, *inter alia*, that Appellant had exhibited an "unusual level of nervousness" during the traffic stop, and "the items were accessible to Appellant by getting the key from his alleged co-conspirator, Mr. Echevarria, who was sitting next to him in the car." Trial Ct. Op., 3/27/19, at 13-14.

As a matter of law, the trial court's speculation and conjecture that Appellant could have asked Mr. Echevarria for the key is not proof that

---

[7] *Cf*. *Commonwealth v. Peters*, 218 A.3d 1206 (Pa. 2019) (discussing constructive possession generally and rejecting constructive possession as a theory upon which to find criminal liability under 18 Pa.C.S. § 6106, carrying a concealed firearm on one's person, where only the unidentified assailant, and not the defendant, carried and used a gun during an attempted murder and robbery).

Appellant had dominion and control over the contraband. Further, we do not agree that the Commonwealth proved that Appellant had constructive possession of the contraband at the time of the traffic stop. The Commonwealth was required to provide evidence that Appellant had dominion and control over the contraband in the locked glove box. However, as Trooper Johnson testified, the key to the locked glove box was "secreted" in Mr. Echevarria's sweatshirt. N.T. Suppression at 14-15, 81. The Commonwealth did not provide any evidence that Appellant had access to that key. Moreover, the Commonwealth presented no evidence to demonstrate that Appellant had control over that contraband. Rather, the Commonwealth proved only Appellant's mere presence in the vehicle at the time of the traffic stop.

Accordingly, we reverse Appellant's convictions for PWID, Possession of Drug Paraphernalia, Receiving Stolen Property, and Possession of Firearms, and direct the trial court to enter a Judgment of Acquittal on those offenses.[8]

Judgment of Sentence vacated. Denial of Suppression Motion Reversed. Case remanded for a new trial on the Conspiracy offense. Convictions for PWID, Possession of Drug Paraphernalia, Receiving Stolen Property, and Possession of Firearms reversed and Judgment of Acquittal on those offenses to be entered by trial court. Jurisdiction relinquished.

President Judge Emeritus Gantman joins the opinion.

---

[8] In light of our disposition, we need not address Appellant's remaining issues.

President Judge Emeritus Stevens files a concurring statement.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/17/2020