J-A08015-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS S. BENITEZ | : | |
| | : | |
| Appellant | : | No. 495 WDA 2021 |

Appeal from the PCRA Order Entered April 12, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002000-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CARLOS S. BENITEZ | : | |
| | : | |
| Appellant | : | No. 496 WDA 2021 |

Appeal from the PCRA Order Entered April 12, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001998-2016

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CARLOS S. BENITEZ | : | |
| | : | |
| Appellant | : | No. 497 WDA 2021 |

Appeal from the PCRA Order Entered April 12, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0001523-2016

| | | |
|---|---|---|
| COMMONNWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

|  |  |  |
|---|---|---|
|  | : |  |
|  | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| CARLOS BENITEZ | : |  |
|  | : | No. 498 WDA 2021 |
| Appellant | : |  |

Appeal from the PCRA Order Entered April 12, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002002-2016

|  |  |  |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
| CARLOS S. BENITEZ | : |  |
|  | : |  |
| Appellant | : | No. 499 WDA 2021 |

Appeal from the PCRA Order Entered April 12, 2021
In the Court of Common Pleas of Blair County Criminal Division at No(s):
CP-07-CR-0002001-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: MARCH 29, 2022**

Appellant, Carlos S. Benitez, appeals from the post-conviction court's order (entered in his four separate criminal cases that were consolidated for trial) denying his timely-filed petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  Herein, Appellant raises several claims of ineffective assistance of counsel (IAC).  After careful review, we affirm.

The PCRA court summarized the pertinent facts and procedural history of this case, as follows:

On June 26, 2016, [Appellant] … was arrested and charged with, *inter alia*, six counts of Possession with Intent to Deliver [(PWID)] arising out of an August 8, 2015 incident[,] and five controlled buys of cocaine using confidential informants occurring between April 18, 2016[,] and June 26, 2016[,] in Altoona, Pennsylvania.

The facts surrounding the August 8, 2015 incident are pertinent to our analysis. That day, Altoona Police Department ([]APD[]) officers were dispatched to 2325 Beale Avenue for an unknown medical emergency. Patrolman Jon Burns arrived on the scene and found Rashelle Summers. Ms. Summers stated repeatedly that [Appellant] was upstairs. Officer Burns entered the residence to render medical aid. Officer Burns found [Appellant] on the second floor, in the northeast bedroom, and observed [that Appellant] appeared to be in distress and [was] having difficulty breathing. [Appellant] became uncooperative and requested [O]fficer Burns leave his room. At some point during this interaction[,] Officer Burns observed a metal crack pipe with black electrical tape on it lying on the floor of the bedroom. [Officer] Burns also observed two other occupants identified as Ms. Summers and Bruce Morton moving items around in the room. Officer Burns suspected they were concealing evidence. [Ms.] Summers later told [another o]fficer … that she lived at the residence with [Appellant,] which was confirmed by the presence of her belongings in the bedroom.

When [Altoona Mobile Emergency Department (AMED)] personnel arrived on the scene, they and Officer Burns assisted [Appellant] down the stairs and began to treat [Appellant] for his medical emergency. As [Appellant] was being loaded onto a gurney, a digital scale fell from his pocket. Officer Burns collected the scale as evidence and [o]bserved a white powdery substance on the scale, consistent with cocaine. [Appellant] was transported to UPMC Altoona Hospital for medical treatment.

AMED technician Austin Lynn was one of the AMED personnel that transported [Appellant] to the hospital. Lynn searched [Appellant] for any weapons or other items that might injure himself or another member of the medical team. Lynn discovered a sandwich bag containing a white[,] rock-like substance from [Appellant's] front right pocket. Upon arrival at the hospital[,] … Lynn requested Officer Burns meet him in the Emergency Room. [Officer] Burns met with Lynn[,] who turned over the bag containing the white[,] rock-like substance.

While [Appellant] was being transported to the hospital, Officers Warling and Wyandt arrived at the residence to assist [O]fficer Burns. [The o]fficers secured the residence in order to prepare and obtain a search warrant. [The o]fficers cleared the residence to ensure no one else was inside. [The o]fficers obtained a search warrant, photographed the residence prior to beginning their search, and proceeded to conduct their search of the house. Officer Plummer located $50 US currency on top of the bedroom dresser, two crack pipes, and a clear tube containing an unknown white substance. Officer Plummer also located suspected crack cocaine scattered throughout the top dresser drawer and in a clothing bin on the bedroom floor. A box of sandwich bags was found shoved behind the bedroom dresser, and a spoon with white residue was lying on top of clothing on a plastic chair. All items were photographed prior to being collected.

At the completion of the search warrant, the residence was turned over to [Ms.] Summers. [The o]fficers responded to UPMC Altoona where they provided a copy of the search warrant and inventory to … [Appellant]. All items were transported to APD where they were properly packaged and secured into evidence. Officer Crist field-tested the crack cocaine at 11:15 p.m.[,] with a positive result for the same. Officer Plummer field-tested suspected [m]arijuana recovered from the scene at 11:18 p.m.[,] which came back positive for the same. Forensic analysis forms were submitted with the crack cocaine for further processing.

\*\*\*

Three attorneys represented [Appellant] at different stages of litigation: Mark Zearfus, Esquire, represented [Appellant] during the preliminary hearing; Scott N. Pletcher, Esquire, represented [Appellant] during pre-trial motions, and Francis Wymard, Esquire, represented [Appellant] at trial and sentencing.

[On] August 24, 2018, following a four-day jury trial, a jury found [Appellant] guilty of six counts [of PWID], and five counts of [c]onspiracy … [to commit PWID].

On November 16, 2018, [Appellant] was sentenced to an aggregate term of five to ten years' incarceration. No post-sentence motions were filed[,] and no direct appeal was taken. [Appellant's] judgment [of sentence] became final on December 17, 2018.

On July 3, 2019, [Appellant] filed a timely[,] *pro se* [PCRA petition].… [Appellant] subsequently retained Todd M. Mosser, Esquire, who filed an Amended Petition on March 3, 2020. A PCRA hearing occurred on July 23, 2020.

PCRA Court Opinion (PCO), 4/12/21, at 1-4.

On April 12, 2021, the PCRA court issued an order and opinion (filed in each of Appellant's four cases) denying Appellant's petition. Appellant filed separate, timely notices of appeal at each docket number, which this Court *sua sponte* consolidated. Appellant also timely complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court thereafter indicated that it would be relying on the rationale set forth in its April 12, 2021 order and opinion in lieu of issuing a Rule 1925(a) opinion.

Herein, Appellant presents three claims for our review:

1. Did the PCRA [c]ourt err by refusing to reinstate [Appellant's] direct appeal rights where it is undisputed that counsel failed to consult with [Appellant] about an appeal after [Appellant] told him he planned to appeal?

2. Did the PCRA court err by denying [Appellant's] claim that trial counsel was ineffective for failing to move to suppress the contraband that was unlawfully seized during the August 8, 2015 incident?

3. Did the PCRA court err by denying [Appellant's] claim that trial counsel was ineffective for failing to move to suppress [Appellant's] warrantless arrest that was effectuated inside his home without exigent circumstances?

Appellant's Brief at 6.

We begin by recognizing that "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the

- 5 -

lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner claims that he received ineffective assistance of counsel, our Supreme Court has stated that:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. A petitioner establishes prejudice when he demonstrates "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." … [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

**Commonwealth v. Johnson**, 966 A.2d 523, 532-33 (Pa. 2009) (citations omitted).

Appellant first contends that his trial/sentencing counsel, Attorney Wymard, was ineffective for not filing a direct appeal on his behalf. This Court has explained:

> It is well settled that when a lawyer fails to file a direct appeal requested by the defendant, the defendant is automatically entitled to reinstatement of his direct appeal rights. **Commonwealth v. Lantzy**, … 736 A.2d 564 ([Pa.] 1999). Where a defendant does not ask his attorney to file a direct appeal,

counsel still may be held ineffective if he does not consult with his client about the client's appellate rights. ***Roe v. Flores–Ortega***, 528 U.S. 470 … (2000).… Such ineffectiveness, however, will only be found where a duty to consult arises either because there were issues of merit to raise on direct appeal or the defendant, in some manner, displayed signs of desiring an appeal. ***Roe v. Flores–Ortega, supra***.

\*\*\*

[W]e acknowledge that our Supreme Court in ***Lantzy*** … held that where there is an "unjustified failure to file a requested direct appeal," counsel is *per se* ineffective as the defendant was left with the functional equivalent of no counsel. Under this situation, no discussion of the potential merit of any claims is necessary or warranted. [***Lantzy***, 736 A.2d] at 572; ***see also Commonwealth v. Bronaugh***, 670 A.2d 147, 149 ([Pa. Super.] 1995) (discussing that once a PCRA court determines that a petitioner sought a direct appeal, the PCRA court is prohibited from addressing the merits of any other potential claims); ***Commonwealth v. Hoyman***, 561 A.2d 756 ([Pa. Super.] 1989) (same).

To establish *per se* ineffectiveness, a defendant must still prove that he asked counsel to file a direct appeal. ***See Commonwealth v. Touw***, 781 A.2d 1250 (Pa. Super. 2001).

***Commonwealth v. Markowitz***, 32 A.3d 706, 714–15 (Pa. Super. 2011)

(footnotes and some citations omitted).

Here, when Attorney Wymard was asked at the PCRA hearing if Appellant "ever request[e]d that [counsel] file a direct appeal in this matter[,]" counsel replied, "He did not." N.T. Hearing, 7/23/20, at 15. Counsel elaborated:

[Attorney Wymard:] My recollection is that [Appellant] and I met in the bullpen both after the trial and after sentencing, and he thanked me for my work, [said] that I did a good job[,] and told me that I shouldn't be upset if an appeal is filed and my name comes up in it. As a result of that, I interpreted it to mean that he was going [in] a different direction with the appeal.

- 7 -

*Id.* at 12.

During Appellant's cross-examination testimony, the following exchange occurred:

[The Commonwealth:] Do you specifically recall ever asking Attorney Wymard to file a direct appeal?

[Appellant:] We talked about it briefly.  I remember him saying, "[Appellant], they should have never issued that search warrant."

[The Commonwealth:] Okay.  But what I'm asking, sir, is do you recall ever requesting Attorney Wymard to file a direct appeal?

[Appellant:] We talked about it briefly.

[The Commonwealth:] I need you to answer the question, sir.  The question is[,] do you ever recall asking Attorney Wymard to file an appeal on your behalf to the Superior Court?

[Appellant:] Oh, yes, I did.

*Id.* at 23-24.

Ultimately, the PCRA court credited Attorney Wymard's testimony that Appellant never requested an appeal be filed.  **See** PCO at 12.  Appellant does not challenge the court's credibility decision on appeal.  Instead, he argues that Attorney Wymard's recollection of his conversation with Appellant demonstrates that Appellant "displayed signs of desiring an appeal," **Flores-Ortega, supra**, thereby triggering counsel's "duty to consult" with Appellant about an appeal.  Appellant's Brief at 11.  According to Appellant, Attorney Wymard did not further discuss an appeal with Appellant and, thus, counsel acted ineffectively.

In ***Markowitz***, we clarified that counsel's failing to adequately consult with his client about an appeal does not constitute *per se* ineffectiveness. ***Markowitz***, 32 A.3d at 716. Instead,

> a ***Strickland/Pierce***[11] analysis is necessary to decide whether counsel rendered constitutionally ineffective assistance by failing to advise his client about his appellate rights. Hence, [an a]ppellant "must plead and prove: (1) that the underlying issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice resulted from counsel's act or failure to act."
>
> > [11] ***Strickland v. Washington***, 466 U.S. 668 … (1984); ***Commonwealth v. Pierce***, … 527 A.2d 973 ([Pa.] 1987) (adopting ***Strickland*** test).
>
> Where counsel has not advised his client about the client's appellate rights, the question becomes whether that failure caused actual prejudice to the petitioner, *i.e.*, "but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." ***Flores–Ortega***, [528 U.S.] at 484…. In analyzing whether there is a constitutional mandate to consult with a defendant about his appellate rights, the Supreme Court opined that a court must determine if "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." ***Id.*** at 480…. Where a petitioner can prove either factor, he establishes that his claim has arguable merit.
>
> In deciding whether the petitioner suffered actual prejudice, the High Court listed several relevant factors. For example, did the petitioner plead guilty, thereby decreasing the number of appealable issues? ***Id.*** Pertinent considerations also include any instructions given by the court with respect to the defendant's right to appeal as well as evidence of nonfrivolous grounds for appeal. ***Id.*** at 479–[]80…. Of course, evidence of nonfrivolous grounds of appeal is not required. ***Id.*** at 486….

***Id.*** (some citations omitted).

Here, we initially conclude that the record belies Appellant's claim that he and counsel did not further consult about the decision on whether to file an appeal. Indeed, Appellant himself testified at the PCRA hearing that he and counsel talked "briefly" about filing a direct appeal and, during that conversation, Attorney Wymard "talk[ed] about an appeal because [of] the conspiracy issue[] and the search warrant issue…." N.T. Hearing at 23. On appeal, however, Appellant does not mention, let alone elaborate on, what counsel ostensibly said about these two potential appellate issues, or make any argument that counsel's advice was legally inaccurate.[1] *See Markowitz*, 32 A.3d at 716 ("[I]t is evident that incorrect advice or failing to properly advise a client can be grounds for an ineffectiveness claim.") (citation omitted). Moreover, to the extent that Attorney Wymard's recollection of his conversation with Appellant indicated that Appellant wished to appeal on the basis that counsel acted ineffectively, such claims generally cannot be raised

---

[1] As context, Attorney Wymard's testimony indicated that the "conspiracy issue" involved certain abnormalities on the jury's verdict sheet regarding some of Appellant's conspiracy charges. N.T. Hearing at 15. Counsel testified that he believed an appeal on this claim would not be worthwhile because "there was no sentence imposed" on the at-issue counts. *Id.* Appellant makes no argument that counsel's advice was incorrect or unreasonable. Additionally, regarding Appellant's claim that he and counsel discussed raising a "warrant issue" on appeal, Appellant claimed at the PCRA hearing that counsel repeatedly said, "they should have never issued that search warrant." *Id.* at 23. However, Appellant's pre-trial attorney did not file a motion to suppress challenging the validity of the warrant, thus waiving any issue(s) involving the warrant on direct appeal. Accordingly, Appellant has not demonstrated that counsel acted unreasonably by not pursuing an appeal on this issue.

on direct appeal, but must be asserted on collateral review. **See Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (reaffirming the prior holding in **Commonwealth v. Grant**, 813 A.2d 726 (Pa. 2002), that, absent certain circumstances, claims of ineffective assistance of counsel should be deferred until collateral review under the PCRA).

Given the evidence presented at the PCRA hearing, and Appellant's undeveloped argument on appeal, we conclude that he has not met his burden of demonstrating that Attorney Wymard did not consult with him about filing an appeal, or that counsel's advice was legally erroneous. Thus, Appellant has not proven that, but for counsel's erroneous advice, he would have filed a direct appeal. **See Markowitz**, 32 A.3d at 17 ("[W]here a petitioner can establish that but for counsel's erroneous advice, he would have filed a direct appeal, he is entitled to the reinstatement of his direct appeal rights."). Consequently, his first issue does not warrant relief.

Next, Appellant contends that the court erred by denying his claim that his pre-trial counsel, Attorney Pletcher, was ineffective for failing to move to suppress the evidence seized during the August 8, 2015 incident. According to Appellant, "police were present in [his] house without a warrant and entered his bedroom against his consent[,] supposedly to render medical aid." Appellant's Brief at 12. Appellant stresses that it is "undisputed that [he] declined medical treatment and insisted that all personnel leave his house." **Id.** at 12-13. "Given [Appellant's] clear lack of consent for anyone to render supposed aid to him, let alone to be in his house," Appellant argues that Officer

Burns "had no right to enter his bedroom." *Id.* at 13. Therefore, he maintains

that "the plain view doctrine was not applicable[,]" and "any evidence that

was obtained as a result of this unlawful activity should have been

suppressed." *Id.* at 14. Specifically, Appellant contends that

> the scale and the crack cocaine that fell from [his] person should
> have been suppressed because [Appellant] was unlawfully seized
> at that point as a result of the officers' illegal seizure of the crack
> pipe and subsequent arrest of [Appellant]. The contraband found
> in [Appellant's] pocket by the medic also should have been
> suppressed for the same reason. And ultimately, all of this
> evidence led to law enforcement['s] obtaining the search
> warrant[] and[,] as such, anything found pursuant thereto should
> have been suppressed as well.

*Id.* (citation omitted).

> In rejecting this claim, the PCRA court comprehensively explained:

> Pennsylvania courts have previously found "[t]hat [a] failure to
> file a suppression motion under some circumstances may be
> evidence of ineffective assistance of counsel." *Commonwealth
> v. Metzger*, … 441 A.2d 1225, 1228 ([Pa. Super.] 1981); *see
> also Commonwealth v. Ransome*, 402 A.2d 1379, 1381 ([Pa.]
> 1979). "However, if the grounds underpinning that motion are
> without merit, counsel will not be deemed ineffective for failing to
> so move." *Metzger*, 441 A.2d at 1228. "[T]he defendant must
> establish that there was no reasonable basis for not pursuing the
> suppression claim and that if the evidence had been suppressed,
> there is a reasonable probability the verdict would have been more
> favorable." *Commonwealth v. Melson*, … 556 A.2d 836, 839
> ([Pa. Super.] 1989).

> [Appellant] contends that Attorney Pletcher was ineffective for
> failing to file a motion to suppress evidence including a crack pipe,
> a scale and crack cocaine, and the items recovered as a result of
> the police executing the subsequent search warrant. In particular,
> he argues that [Attorney Pletcher] was ineffective for failing to
> adequately argue that the search warrant was defective on the
> grounds that (1) the crack pipe from the bedroom should have
> been suppressed based on the unlawful entry by law

- 12 -

enforcement[,] which then effectuated the plain view of the pipe, and (2) the scale and crack cocaine from [Appellant's] person should have been suppressed as the result of the unlawful seizure and search of [Appellant's] person when he was escorted out of his room by law enforcement and subjected to unwanted medical treatment.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or Affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const.[, A]mend. [IV.]

"The touchstone of the Fourth Amendment is reasonableness." ***Commonwealth v. Coughlin***, 199 A.3d 401, 405 (Pa. Super. 2018); citing ***Michigan v. Fisher***, 558 U.S. 45 … (2009); ***see also Commonwealth v. Johnson***, 68 A.3d 930, 935 (Pa. Super. 2013) (recognizing "delicate balance" of protecting citizens' rights as well as safety of citizens and police). In determining reasonableness, the ***Coughlin*** Court's explanation is instructive, explaining:

> While the warrantless entry and search of home is presumptively unreasonable, exigent circumstances may overcome this presumption. It is well[-]settled that exigent circumstances exist where the police reasonably believe that someone within a residence is in need of immediate aid.
>
> Recently, our Supreme Court clarified that the scope of the emergency aid exception must be strictly circumscribed by the exigencies which justify its initiation.
>
> ***
>
> Nevertheless, officers do not need ironclad proof of likely serious, life-threatening injury to invoke the emergency aid exception.
>
> > The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in

circumstances that are tense, uncertain, and rapidly evolving. Additionally, it is a matter of common sense that a combination of events each of which is mundane when viewed in isolation may paint an alarming picture.

[] **Coughlin**, 199 A.3d [at] 405-08 … [(cleaned up)].

Here, the undisputed evidence on the record shows that on August 8, 2015[,] a 9-1-1 call, was made describing a medical emergency at 2325 Beale Avenue. It [i]s further undisputed that [O]fficer Burns was dispatched to 2325 Beale Avenue to render aid in an unknown medical emergency. Once Officer Burns arrived, he encountered a frantic Rashelle Summers who repeatedly told Officer Burns that [Appellant] was upstairs. At the time of the incident[,] Rashelle Summers resided at 2325 Beale Avenue with [Appellant]. Officer Burns entered the residence and encountered [Appellant,] who appeared to be having difficulty breathing, confirming the existence of a medical emergency. Within one or two minutes of Officer Burn[s'] arrival, other officers, and medical first responders arrived and began administering medical aid to [Appellant]. At some point after their first encounter, [Appellant] requested Officer Burns leave his bedroom. At some point[,] Officer Burns observed a crack pipe on the floor of [Appellant's] bedroom[,] and Ms. Summers and another individual appeared to be hiding things. All of this occurred within a matter of minutes.

Under Pennsylvania law, "the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." [**Mincey v. Arizona**, 437 U.S. 385, 393 (1978)]. Here, it is clear that Officer Burns was responding to a medical emergency and that[,] during the course of his legitimate medical activities[,] he observed a crack pipe on the floor near [Appellant]. We conclude that under these circumstances[,] Officer Burns' entry was objectively reasonable.

PCO at 14-17.

Additionally, the PCRA court concluded that Officer Burns was lawfully in Appellant's bedroom, where contraband was in plain view, because Ms. Summers had joint access and control of the residence, which she shared with Appellant, and she had consented to the officer's entering the home and

- 14 -

directed him to Appellant's bedroom. ***See id.*** at 17 (citing ***Commonwealth v. Silo***, 389 A.2d 62, 66 (Pa. 1978) ("The authority which justifies the third-party consent does not rest upon the law of property … but rests rather on mutual use of the property by persons generally having joint access or control for most purposes….")). Accordingly, the court concluded that Appellant's claim that Attorney Pletcher was ineffective for failing to file a motion to suppress lacked arguable merit.

We agree. Officer Burns entered Appellant's residence in response to an emergency 911 call, and with the consent of Ms. Summers, who also resided at the home. Thus, consent, as well as exigent circumstances, made the officer's entry of Appellant's home lawful.

Furthermore, Ms. Summers directed the officer to Appellant's bedroom, where the officer saw Appellant in distress and struggling to breathe. Based on his observations of Appellant, Officer Burns reasonably believed that Appellant was in need of immediate aid and, thus, exigent circumstances existed to justify his entry of Appellant's bedroom. Once inside the room, Officer Burns saw a crack pipe in plain view, and observed Ms. Summers and another individual seeming to conceal evidence in the room. Moreover, a scale fell into plain view from Appellant's pocket as he was being moved by paramedics, and a medic later found crack cocaine in Appellant's pocket.[2]

---

[2] Appellant offers no developed discussion, or citation to any legal authority, to support his claim that he had been illegally seized at the point that the scale

While Appellant claims that he at some point told Officer Burns to leave his room, and that he tried to refuse medical aid, he does not claim that the emergency of his physical distress and inability to breathe had ceased when he made these demands. Thus, Appellant has not demonstrated that Officer Burns acted outside the scope of the emergency aid exception by remaining in Appellant's room to render aid. *See Coughlin*, 199 A.3d at 406 (stating that "the scope of the emergency aid exception must be 'strictly circumscribed by the exigencies which justify its initiation[,]'" and "once the emergency that permit[s] [warrantless] entry [has] ceased, [the] right of entry … under the emergency aid exception [has] also ceased"). Accordingly, the contraband observed in plain view in Appellant's room, the scale that fell from his pocket, and the crack cocaine discovered on his person were lawfully seized and supported the issuance of the search warrant. *See Commonwealth v. Leed*, 186 A.3d 405, 413 (Pa. 2018) ("Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably

fell from his pocket, or when the medics found cocaine on his person. Therefore, this argument is waived. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.").

In Appellant's third and final issue, he argues that Attorney Pletcher was ineffective for failing to file a suppression motion based on the alleged illegality of his arrest. Appellant contends that police lacked exigent circumstances to justify their warrantless entry into his residence and his subsequent arrest therein. *See Commonwealth v. Santiago*, 736 A.2d 624, 631 (Pa. Super. 1999) ("[P]robable cause alone will not support a warrantless search or arrest in a residence ... unless some exception to the warrant requirement is also present. It is well[-]settled that, absent consent or exigent circumstances, private homes may not be constitutionally entered to conduct a search or to effectuate an arrest without a warrant, even where probable cause exists."). Appellant insists that "because no warrant was obtained in this case, [his] arrest was unlawful and the charges against him should have been dismissed." Appellant's Brief at 16.

Initially, we discern no error or abuse of discretion in the PCRA court's conclusion that Appellant failed to sufficiently plead this ineffectiveness claim in his petition. As the court observes, "the only facts that [Appellant pled] as to this claim [were] that (1) [Appellant] was arrested, (2) there was no warrant, (3) that was illegal, and (4) [c]ounsel failed to file a motion to [s]uppress [based on Appellant's] warrantless arrest." PCO at 20. However,

> [t]he mere fact that [Appellant] was arrested without a warrant does not entitle him to relief under the PCRA. The fact that prior counsel failed to file a motion to suppress such an arrest does not

entitle [Appellant] to relief under the PCRA. To qualify for PCRA relief, [Appellant] would first have to show that underlying claim has [arguable] merit. In asserting that [Appellant] was arrested without a warrant, and that such an arrest was illegal, [Appellant] begins to get at the merits of the underlying claim[,] but fails to show that [his] arrest was illegal by a preponderance of the evidence as required by the PCRA. He further fails to plead any facts to show that [Attorney] Pletcher had no reasonable basis for deciding not to pursue a motion to suppress [the] warrantless arrest. Merely asserting that the arrest was illegal, and therefore, [that Attorney] Pletcher's conduct was unreasonable[,] does not meet the standard of proof required by the PCRA.

*Id.*

We agree. Appellant offered no discussion in his petition, and does not explain on appeal, any of the circumstances surrounding his arrest to demonstrate that it was at least arguably illegal. It is well-settled that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (citations omitted).

Moreover, even if the arrest was illegal, Appellant fails to identify what evidence was discovered incident to his arrest that would have been suppressed had counsel filed a motion. This Court has clarified that "the remedy for an illegal arrest is the suppression of the evidence obtained by the illegal arrest, and not … the quashing of the information." *Commonwealth v. Price*, 593 A.2d 1288, 1289 (Pa. Super. 1991). Therefore, Appellant has not demonstrated that his underlying suppression claim has arguable merit, or that he was prejudiced by counsel's failure to file a motion to suppress on this basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/29/2022